# D. MORRISON & Co., Appellants, *vs.* LOVEJOY & BROCKWAY, Respondents.

### APPEAL FROM THE DISTRICT COURT OF HENNEPIN COUNTY.

If a juror is challenged for actual bias and the parties by consent submit the question of bias to the Court, the finding of the Court thereon is conclusive.

If the truth of a challenge be admitted by the other party, there is nothing left to be tried; and it is not error for the Court to refuse to permit the juror thereafter to be examined by the party challenging, nor to refuse him permission to withdraw his challenge.

Where a written executory contract specifies the time during which such contract is to continue, the time is material; and it cannot be shown by parol, contrary to the terms thereof, that in a certain contingency the contract was to be determined prior to the time therein specified.

The counter-claim authorized by the *second subdivision of section 71, page 541, of the Compiled Statutes,* extends to all claims for damages arising *ex contractu,* and existing at the commencement of the action, whether such damages are liquidated or unliquidated.

Under the written executory contract for the manufacture of lumber at certain mills during a given term, at a specified price per thousand feet, one party agreed to furnish logs for manufacturing to the full capacity of the mills during the continuance of the contract, and the other party to employ the mills exclusively for the party furnishing, during said term; but before the expiration of the term the former refused to furnish, or to proceed further under the contract. *Held,* in an action by the manufacturer, that he could not treat the contract as continuing after such breach, and recover the contract price for the lumber which he could have manufactured under said contract up to any specified time, without averring and proving a continuing readiness and ability to perform on his part. That he might however treat the contract as terminated and sue at once for the damage sustained by such breach. That in such a case his damages would be measured by the value of the contract to him at the time of the breach. And that the value of such a contract depended upon the profits which the manufacturer would have realized therefrom had it been continued and faithfully performed during the term. But that in estimating such profits the rent, or value of the use of the mills and necessary machinery, should be taken into the account as a part of the cost of manufacturing.

This action comes up on appeal by the Defendants from the decision of the Court refusing to set aside the verdict of the jury, and to grant a new trial. The action was brought by the Plaintiffs to recover a balance due them upon a written contract under seal, and also to recover damages for the breach of the contract. The substantial provisions of the contract are stated in the opinion of the Court; also the facts set up in the answer as a defence.

The action was tried in August, A. D. 1860, in the District Court of Hennepin county, by a jury, and a verdict rendered for the Plaintiffs, and a motion made for a new trial by the Defendants, upon a case prepared and settled under the statute.

The motion for a new trial being overruled, the Defendants bring the case to this Court by appeal.

Points and Authorities of Appellant.

I.—That a juror who has formed an opinion, and has a fixed and settled conviction in reference to any one of the issues in the case he is called upon to try, is disqualified to sit, from actual bias.

II.—That the challenging party has a right to interrogate the juror challenged, for the purpose of ascertaining if he be biased, whether the grounds of challenge are traversed or not by the opposite party.

III.—That the party interposing a challenge to a juror, has the right to withdraw his objection or challenge at any time before the trial of such challenge has been commenced, and especially when no preliminary questions have been asked.

IV.—That to enable a party to recover special damages for an alleged breach of an executory contract, containing mutual and concurrent covenants and agreements, and which is claimed to be a subsisting contract, he must not only aver, but prove a readiness and ability to perform upon his part; and in the absence of such averment, no evidence of such readiness or ability is admissible. *Risinger vs. Cheny*, 2 *Gilman* 84, 7 *U. S. Dig.*, *p.* 31, *sec.* 222; *Porter vs. Rose*, 12 *John*, 209; *Green vs. Reynolds*, 2 *John.* 208; *Parker vs. Paraiale*, 20 *John*, 130; *Denham vs. Petee*, 4 *Seld.*, 508; *Cornwall vs. Haight*, 8 *Barb.*, 331–2; *Topping vs. Root*, 5 *Cow. R.*, 404; *Williams vs. Healey*, 3 *Denio*, 363; *Johnson vs. Wygant*, 11 *Wend.*, 48.

V.—That even had the plaintiff averred a readiness and ability to perform, such readiness and ability must be continuing; and it having appeared on trial that they surrendered the possession of the mills to the lessors, December 12, 1857, thus demonstrating their inability to perform, they could not, under any circumstances, recover for such alleged breach, beyond that period. *The Dutch Church vs. Bradford*, 8 *Cow. R.*, 457, 500, 521–22.

VI.—That it was error in the learned judge who tried the

case in the court below, to admit testimony in respect to the capacity of the mills in the absence of any averment of their capacity.

VII.—The rule of damages for the alleged breach by the defendants of the contract, set out in the complaint, is not the profits that might have been realized by the plaintiffs had they continued to mannfucture lumber under the contract, for the period for which damages are claimed ; because,

1st. There is no rule by which such profits can be ascertained, or data upon which to estimate the quantity of lumber that would have been manufactured at these mills during that period. .

2nd. Such damages would be therefore, uncertain, remote, and speculative, instead of direct, certain and actual. *Freeman vs. Chute*, 3 *Barb.*, 424, 2 *Greenleaf Ev. sec.* 261; *Blanchard vs. Ely*, 21 *Wend.*, 342; *N. Y. & H. R. R. vs. Story*, 6 *Barb.*, 422–3; *Clark vs. Mussiglia*, 1 *Denio*, 317 ; *Jones vs. Van Patten*, 3 *Ind.*, 107; *Wilson vs. Mintin*, 1 *Denio*, 603; *Sedgwick on Damages*, (*marg.*) 202, *note* 1; 2 *Parsons on Contracts*, 458; *Sedgwick on Damages*, 210-11; 1 *Lead. Ca. in Eq.* 5, 79-80 ; 2 *Lead. Ca. in Eq. pt.* 2, *pp.* 12-13 ; 2 *Smith Lead. Ca.*, 5th *Am. Ed.*, 23, 24, 26, 28, 37, 38, 39, 42, 43, 44, 46, 48.

VIII.—That the plaintiffs were not permitted to lie idle after the alleged breach, for the purpose of enhancing the losses which might be sustained or the damages they might recover, but were bound to use proper diligence and exertions to prevent loss; and if they failed to do so, cannot now look to the defendants for indemnity. 2 *U. S. Dig. p.* 1, *sec.* 3 ; 7 *Green R.* 51; 6 *Greenl.*, 208 ; 2 *U. S. Dig., p.* 10, *sec.* 195 ; *Miller vs. Mariners' Church*, 3 *Green R.*, 51, 55 & 56 ; *Heckscher vs. McCrea*, 24 *Wend.*, 308, 309, 310, 313, &c.; *Jones vs. Van Patten*, 3 *Ind.*, 107 ; 2 *Greenl. Er.*, 261 ; *Davis vs. Fish*, 1 *Iowa*, 407 ; *Sedgwick on Damages*, (*margin*) 202, *note* 1 ; *Taylor vs. Read*, 4 *Paige*, *ch.* 568 to 574 ; *Shannon vs. Comstock*, 21 *Wend*, 457; *Cow. Treat. par.* 1508.

IX.—That in offering or essaying to prove the contents of a written instrument, it was error in the Court below to permit plaintiff's Counsel to ask the witness the question, "For

what purpose was the assignment made?" as the purpose could only be determined by showing the contents themselves.

X.—That two or more written instruments made and entered into at the same time, between the same parties, and in respect to the same subject matter, are part and parcel of the same transaction, and may be connected by parol evidence. 1 *Greenl. Ev. sec.* 283 *and note* 2; *Chitty's Cont.* 89 *and notes*; *Whitehurst vs. Boyd*, 8 *Ala.*, 375; *Sewell vs. Henry*, 9 *Ala.* 34; *Cornell vs. Todd*, 2 *Denio*, 130.

XI.—That parol evidence of the facts and circumstances attending the making and execution of a written agreement, the situation of the parties at the time, and the inducements or considerations which led to its execution, is admissible for the purpose of showing the real object of the parties to such agreement; and especially so, where a fraudulent use or application of such agreement is attempted by either of the parties thereto; the fraudulent use being just as effective in opening the transaction to parol inquiry, as though there had been fraud in obtaining it. 1 *Green'f Ev. sec.* 284, 285, 286, 304; *Chitty on Cont.*, 54-5 *and notes*; *Hadley vs. Boxendale*, 36 *Eng. L. & Eq.*, sec. 398; *same case* 9 *Exqr.*, 341; *Sedg. on Damages (marginal page)* 200, 202; *and note*; *Bellinger vs. Kits*, 6 *Barb.*, 278; *Wilson vs. Troup*, 2 *Cow.*, 228, &c.; 1 *Smith L. Cases*, 507; *Oliver vs. Oliver*, 4 *Rawl.* 143, *and cases there cited*; *Comrs. vs. McCalmet*, 3 *Penn. Rep.*, 122; *McCrea vs. Pannant*, 6 *Wend.* 460.

XII.—That when parties have agreed upon a compromise of existing differences, and such compromise consists in several apparently distinct and independent executory parts, evidenced by as many distinct and apparently independent instruments of writing, parol evidence is admissible to connect the one with the other, and to show that they were in fact a part and parcel of the same transaction or scheme of compromise; and particularly where an attempt is being made to claim either part as independent of the others, or make other fraudulent use of it. 1 *Smith's Lead. Ca.* 445, *Cumber vs. Wane*; 1 *Greenl. Ev. sec.* 283, 284 *a* & 302; 1 *Mass.*, 279; *Parkhurst vs. Van Courtland*, 14 *Johns*, 15 *to* 35; *Moransy vs. Quarles*, 1 *McLean*, 195; *Dorr vs. Chamberlain*, 5

*McLean*, 581-2; 3 *Phil. Ev.* (*C. & H. notes*) *note* 984, *pp.* 1473 & 1474; *Roach vs. Cusine*, 9 *Wend.*, 232; 3 *Phil. Ev.* (*C. & H. notes*) *note* 958 & 976, *p.* 1462.

XIII.—That an offer to prove the existence and terms of a prior parol agreement, not inhibited by the Statute of frauds, the legal effect or operation of which if proved, might or would be to rescind or avoid a subsequent written agreement between the same parties, is not an offer to change or vary the terms of such subsequent agreement, in contemplation of the rule which excludes parol testimony when offered to change or vary the terms of a written agreement, especially where there is nothing in the prior parol agreement which is at all in conflict with the the terms of the subsequent written agree-ment. 3 *Phil. Ev.* (*C. & H. notes*) *note* 961, *p.* 1432; *note* 969, *p.* 1450; 1 *Lord Raymond*, 464; *Oliver vs. Oliver*, 4 *Rawdle*, 143; *Dinkle vs. Minshall*, 3 *Binn*, 588; *Christ vs. Diffenbach*, 1 *S. & R.*, 464; *Hultz vs. Wright*, 16 *S. & R.*, 345; *Chitty on Cont.*, 96 *and notes;* *Wallace vs. Baker*, 1 *Binn*, 616; 3 *Penn.*, 122.

XIV.—That the Court below erred in rejecting the offer of Defendant's Counsel found on folios 95 and 96 of case, to put in evidence the agreement and supplemental agreement found on folios 122 and 143 of record; and also in rejecting the offer to prove the breaches by Plaintiffs, of such agreement and supplement, and the damages resulting therefrom. *Ives vs. Van Epps*, 22 *Wend.*, 155; *Beardsley vs. Stoner*, 7 *How. Pr. R.* 294; *Davidson vs. Remington*, 12 *How. Pr. R.*, 310; *Page vs. Angel*, 8 *How. Pr. R.*, 335; *Lemmon vs. Truel*, 13 *How. Pr. R.*, 248, *and cases there cited.*

XV.—The Court below erred in excluding the articles of submission, so called. 1 *Greenl. Ev. sec.* 283.

XVI.—That it was competent for Defendants to show what the consideration of the contract set out in the complaint was, and that the same had failed in whole or in part. *Sedgwick on Dam.*, 178-9; *Bingham vs. Wildenax*, 1 *Comst.* 509; *McCrea vs. Pannant*, 16 *Wend.*, 460, *and cases there cited.*

XVII.—That where a compromise has been made, consisting of several distinct executory parts, if one part of it fails, it all must fall: no other branch of it can be enforced when

one branch has become impracticable or impossible—each part being the consideration of the other. 1 *Smith's Lead. Ca.* 507; *Nave vs. Fletcher,* 4 *Littell,* 242.

XVIII.—That the price at which the Defendants may have sold lumber manufactured by the Plaintiffs at these mills, was not evidence of the fact that the lumber was well or properly manufactured.

XIX.—That if the Plaintiffs failed to manufacture the lumber for the Defendants in a proper manner and with prudence and economy, so far as the mills would cut and the logs would make the same, then the Defendants were absolved from furnishing any more logs under the contract, and were justified in abandoning it, even though it had been an independent contract. *Cumber vs. Wane,* 1 *Smith's Lead. Ca.* 463; 4 *U. S. Dig. p.* 30, *sec.* 687; 2 *Gilman* 84.

XX—That even if the Plaintiffs' damages are to be measured by the probable profit which they might have realized out of the manufacture of lumber under the contract, from September 2, 1857 to September 1, 1858, then, in estimating these profits, the jury must take into consideration, as a part of the cost of manufacturing said lumber, the rents which the Plaintiffs were paying for the mills, and also the value of the Plaintiffs' services; and the Court below erred in refusing to so instruct the jury, when requested by Defendants' counsel.

XXI.—That the Court below erred in refusing to charge as requested by Defendants' counsel, "that the re-entry by the lessors of the mills, in December 1857, absolved the Plaintiffs from the payment of rent after the date of such re-entry." 7 *U. S. Dig., p.* 31, *sec.* 222; *Dyett vs. Pendleton,* 8 *Cow.,* 727.

XXII.—That the Court erred in charging the jury, "that if the Defendants, knowing the manner in which the lumber was manufactured, accepted it from the Plaintiffs without finding fault, and as a compliance with the contract on the part of the Plaintiffs, in respect to its manufacture, the Defendants are precluded from now urging that it was not well manufactured," for these reasons:

1st. There was no evidence upon which to base such charge.

2d. The evidence of the witnesses of the Plaintiffs and Defendants was to the exact contrary.

3d. It was not therefore called for by the case and was calculated to mislead the jury. *Lomax vs. Bailey*, 7 *Black.*, 599 ; *Cauley vs. Ingersoll*, 4 *id.*, 493 ; *Linard vs. Patterson*, 3 *id.*; 353 ; *McIntire vs. Morris*, 14 *Wend.*, 94.

XXIII.—That receiving the lumber manufactured by the Plaintiffs out of Defendants' logs, and making payments upon it, was not evidence of its acceptance by them, as manufactured by Plaintiffs in accordance with the contract ; and the Court erred in so charging. 2 *Smith's Lead. Ca.*, 5th *Am. Ed.*, 33 ; *Le Duc vs. Legrruaue*, 24 *Wend.*, 60 ; *Chitty Cont.*, 406-7 *and notes*.

XXIV.—The Plaintiffs, by direct averment in their pleadings, having alleged and declared under oath, that they were not, in any manner, bound to saw logs for the Defendants, at any time after the 3d day of February, 1857, they are estopped from showing or claiming anything to the contrary ; and such having been the case, there could be no obligation on the Defendants to provide logs, as there was no mutuality of obligation.

XXV.—The verdict of the jury was contrary to the law and against the evidence.

Points and Authorities for Respondents.

I.—The first objection which the record discloses is in connection with the empannelling of the jury. One Julius Haus being called as a juror was challenged by the Defendants for actual bias, which challenge was denied by the Plaintiffs' counsel, and thereupon the matter was submitted to the Court without the intervention of triers. The Court found the challenge not true—to which finding counsel for the Defendants excepted.

The decision of the Court upon the question of *fact*, was final, and there is no such thing as taking exception and having the matter reviewed by this Court.   See *section 35, page 775, Statute*.

One George E. Huy, also called as juror, was challenged by the Defendants' counsel for actual bias, and the challenge admitted to be true by counsel for Plaintiffs.   Whereupon,

the counsel for the Defendants insisted upon the right to interrogate said juror as to whether said challenge was true or not. To which counsel for the Plaintiffs objected, on the ground that there was nothing to try—which objection was sustained by the Court, and exception taken by Defendants' counsel. That thereupon Defendants' counsel offered to withdraw the challenge to said juror, to which said counsel for Plaintiffs objected, upon the ground that the challenge having been made and admitted to be true, the question as to the competency of said juror was determined; which objection was sustained by the Court, and exception taken by Defendants' counsel.

There was certainly no error in this. The counsel had the right to challenge the juror or not. If challenged, counsel upon the other side must either admit or deny the challenge. If denied, it must then be tried. If admitted, that ended the matter, and the juror must stand aside. *Sec.* 28, *page* 775, *Statute.*

II.—Plaintiffs called James A. Lovejoy, one of Plaintiffs, as a witness, and, after proving amount of work done by Plaintiffs under the contract, and balance due from Defendants up to September 1, 1857, and the breach of the contract by Defendants at that time, in refusing to furnish any more logs, and forbidding Plaintiffs from further performing under said contract, and the action of the parties at the time, as shown by exhibits A, B, C, and D, Plaintiffs' counsel put the following question to the witness :

" Were you prepared to go on and saw lumber in accordance with the contract, had logs been furnished you ?"

" Which said question and answer thereto was objected to by Defendants' counsel, on the ground that no readiness or ability to go on and perform said contract by Plaintiffs is averred in said complaint, and that the evidence is irrelevant and immaterial. Which objection was overruled by the Court and the question answered by the witness, and exceptions taken by Defendants' counsel."

There was no error in this ruling of the Court. In the first place, it was not necessary for the Plaintiff to allege or prove a readiness or ability to go on and perform the contract on

their part in direct terms.  An allegation that they had in all things performed the contract on their part, up to a certain period, at which time the Defendants broke the contract by refusing to furnish more logs to be sawed, and forbidding the Plaintiffs from further performing under the contract, with proof in support of such allegations, would have been sufficient to entitle the Plaintiff to recover, especially in view of that provision of the contract which reads as follows :

" And it is further understood and agreed by the parties hereto, that in construing this contract, the undertakings and agreements on the part of the said parties of the second part, (the Defendants,) to be performed and kept, shall be construed to be, and shall be conditions precedent to the performance of and undertakings of the parties of the first part, (Plaintiffs,) so far that in case the said parties of the second part shall fail to furnish and supply the logs, in manner herein before stated, unless prevented by Providential acts," "then it shall and may be lawful for the said parties of the first part to annul and rescind this contract, and sue for and recover, of said parties of the second part, any damages which they may have suffered, by reason of the nonperformance of the terms of this agreement, or any part thereof." 8 *Barb.*, 426; 21 *Wend.*, 457.

But whether necessary or not, the complaint does allege substantially a readiness and ability on the part of the Plaintiffs to go on and perform the contract.

It contains the following allegations:

" That the Plaintiffs have at all times and in all things kept and performed their said contract; that the Defendants have not kept and performed said contract, but have broken and violated the same."

" That the Defendants, on the 2d day of September, 1857, refused and neglected, and ever since that time have neglected and refused, to furnish and deliver to the Plaintiffs any logs to be manufactured under and by the provisions of said contract, and then and there forbade the Plaintiffs cutting, sawing or manufacturing lumber from logs which Defendants had delivered to the Plaintiffs to be manufactured under said contract;" "and then and there refused to go on under the provisions of said contract."

"The Plaintiffs say that they have suffered and sustained damages in consequence of the non-furnishing of logs as provided in said contract, and Defendants refusal to perform the conditions thereof in that respect, in the sum of two dollars and ninety-eight cents for each and every thousand feet of lumber which said Plaintiffs could manufacture between said 2d day of September, 1857, and the first day of September, 1858. That the Plaintiffs could and would have manufactured and piled during said time, in all things according to said contract, thirty-four millions seventy-one thousand feet," &c.

These allegations were amply sufficient. To show that the Plaintiffs were prepared to go on was but introductory, or paving the way to show what they could have done.

III.—After having proved the breach of the contract by the Defendants, "the general proposition was then made by the Plaintiffs' counsel to prove Plaintiffs' damages by showing the amount of lumber they could have manufactured during the one year after September second, 1857, (date of the breach,) and the cost of manufacturing the same, and thus determine the measure of damages."

The question here raised involves the rule by which the Plaintiffs' damages are to be estimated for the breach of the contract.

We claim as the rule the difference between the contract price and the cost on what could have been manufactured during the time for which damages are claimed.

The Defendants claim that such a rule would be giving remote and speculative damages which the law does not allow.

It is admitted that remote and contingent damages, depending on the result of successive schemes and investments, are never allowed for the violation of a contract. But no principle of law is better settled than that profits or advantages, which are the direct and immediate fruits of a contract entered into between parties, constitute the true measure of damages for the breach of such contract. The rule contended for in the case at bar falls directly under this latter principle. *Masterson & Smith vs. The Mayor, &c., of Brooklyn, 7 Hill,* 62, is directly in point, and a leading case in this country upon the subject, and the attention of the Court is respectfully asked to its careful consideration.

This case is especially referred to and approved in *Seaton vs. 2d Municipality*, 3 *La. Annual R.*, 45. Also by the Supreme Court of the United States in the case of *P. W. & B. R. R. Co. vs. Story*, 13 *How.*, 307. Also, *Lawrence vs. Wardell*, 6 *Barb., S. C. R.* 423; *N. Y. & H. R. R. Co. vs. Story*, 6 *Barb., S. C. R.*, 419; *Clark vs. The Mayor*, 3 *Barb. S. C. R.*, 288, *Clark vs. The Mayor*, 4 *Comstock*, 338; *Rayalton vs. R. & W. Turnpike Co.*, 14 *Vt.*, 311 *and* 324; *Clifford vs. Richardson*, 18 *Vt.*, 620; *Sedgwick on Damages*, 73, 226–7, 364; *Parsons on Contracts, vol. 2, pp.* 460–1, *and notes*.

The damages claimed in the case at Lar are the immediate and direct consequence of the breach of the contract, and can be determined with great accuracy. The price to be paid the Plaintiffs was fixed by the contract. The quantity of lumber the mills would cut, and the cost, could be shown by any person acquainted with the mills and business. There can be no question as to the competency of the testimony offered.

IV.—The Plaintiffs having concluded the testimony on their part, the fourth point arises upon testimony offered by the Defendants and excluded by the Court. The contract, it will be noticed, provides that it shall continue in full force, and be binding between the parties " from and after the day of the date of this agreement, until the 15th day of May, 1860. There is no contingency mentioned in the contract by which it is sooner to terminate than the 15th of May, 1860, unless the mills are destroyed by fire or floods. The answer alleges in substance that, at the time this agreement was entered into, there was a verbal understanding between the parties that it should terminate on the first day of September, A. D. 1857, provided a certain award was not made by that time by arbitrators appointed to settle certain former differences between the parties, and that no such award was ever made, whereby, it is claimed, the contract ceased to be binding between the parties at that time. This allegation in the answer could have been demurred to, but in order to save time, it was thought best to let it stand, and object to testimony offered in support of it at the trial. At the trial the Defendants offered testimony in support of this allegation in the answer, which was objected to and excluded by the Court. The offer was

made two or three times in different forms, but with the object and purpose all the time of varying a written contract by a verbal understanding between the parties, had at the time of its execution. The offers of this testimony will be found in the case folios 94, 95, 96, 98, 99, 100-1-2-3, and are in the following words :

" Counsel for Defendants offer to prove by parol that on or about the 20th day of March, 1857, the Plaintiffs and Defendants met at St. Anthony for the purpose of attempting to compromise certain differences and controversies which then existed between them, growing out of and connected with the manufacture of lumber at the Saint Anthony mills, under a certain agreement and supplement, executed prior to that time, and that they did at that time agree upon a basis of compromise which was as follows : That the whole of the differences existing between them should be submitted to three arbitrators, the award of whom, or a majority of whom should be final. That a new contract should be entered into for the manufacture of lumber between Plaintiffs and Defendants, and that the arbitrators should take into consideration, in assessing their damages, the whole period for which the original and supplemental agreements had to run, that is to say, to allow damages prospectively, as well as retrospectively. That afterwards, on the 31st day of March, the contract in evidence and the articles of submission of the differences and controversies between the Plaintiffs and Defendants were executed at the same time, by the same parties, and as a part of the same transaction, in pursuance of the terms and basis of compromise previously agreed upon. That the submission failed by reason of the disagreement of the arbitrators on or about August 25th, 1857.

" The above evidence is offered for the purpose of showing that after the 2d day of September the contract set out in the complaint was no longer of any binding force between the parties thereto. The above evidence was objected to by the counsel for the Plaintiffs; the objection sustained by the Court, whereupon the counsel for the Defendents excepted.

" Counsel for the Defendants then offered in evidence the submission papers referred to in the answer, which was ob-

jected to by the Plaintiffs' counsel as immaterial. The objection was sustained by the Court, and exceptions thereunto taken by counsel for the Defendants.

" The Defendants then offered to prove that certain differences and controversies existed between the Plaintiffs and Defendants in the early part of 1857, connected with and growing out of a certain agreement dated September 2d, 1854, and a supplemental agreement dated April 30th, 1856, respecting the manufacture of lumber at the Saint Anthony mills. That on or about the 20th day of March, 1857, the parties met for the purpose of adjusting and compromising said controversies and differences, when the following terms were agreed upon, as a basis of compromise, viz. :

" That the whole of the matters in difference between the parties should be submitted to these arbitrators, the award of whom, or any two of whom, should be final and conclusive between the parties.

" That a new contract should be entered into for the manufacture of lumber at said mills between said parties, and that the arbitrators should, in assessing the damages, give prospective damages during the whole term which said agreement had to run, to-wit : till May 15th, 1860, as well as retrospective damages. And that if the arbitrators failed to make an award, then the said contract should be determined and ended, and the parties thereto reinstated in all their rights as they existed at the date of agreeing upon the terms of said compromise, but if an award was made, then said contract to remain operative till May 15th, 1860.

" That the arbitrators subsequently met and heard the allegations and proofs of the respective parties, when, on or about the 25th day of August, 1857, they failed to make an award in consequence of disagreement, and notified the parties thereof.

" The above evidence was objected to by Plaintiffs' counsel, upon the ground that it was irrelevant and immaterial, or else that the effect of the evidence would be to vary the terms of a written contract. The objection was sustained by the Court, and exception to the ruling taken by counsel for the Defendants.

" The Defendants then offered to prove that the contract specified in the complaint was a part of a compromise and plan of settlement entered into by the parties thereto, to adjust and settle difficulties then existing between them as set up in Defendants' amended answer. That by the terms of said compromise it was expressly agreed by and between the respective parties thereto, that said contract should only continue in force in case the whole of said plan of compromise should be carried out by a final award, and should determine and cease to be operative upon a failure of the arbitrators to make an award; that through mistake and misapprehension this portion of said agreement was not incorporated in said contract, whereas it should have been, in order to fully express the actual agreement made between said parties. Wherefore the Defendants pray the reformation and correction of said contract in accordance with such actual agreement, and ask leave of the Court so to amend their said answer as to allow such proof and reformation of said contract. The counsel for Plaintiffs objected.

" Offer and leave to reform and amend declined by the Court, to which ruling counsel for Defendants excepted.

" The Court declined to grant permission to amend, and exception thereto was taken by counsel.

" Defendants then offer to show that the submission of the existing difficulties between Plaintiffs and Defendants, in March, 1857, was the consideration for making and entering into the contract set out in the complaint, dated March 30, 1857.

" The above proposition was objected to by counsel for the Plaintiffs as immaterial. · The objection was sustained by the Court, and exception taken by· Defendants' counsel to the ruling."

That the testimony thus offered was properly excluded cannot admit of any question in our judgment. It was nothing more nor less than an offer of agreements and understandings between the parties had at the time the contract was entered into, to terminate it contrary to its own stipulations.

That all understandings or agreements had between parties

prior to or cotemporaneous with the execution of a written contract relating thereto, are merged in the writing, and cannot be given in evidence to alter, vary, or affect the written contract, is a principle too familiar to justify the citation of authorities. That the time a contract has to run, or within which it is to be performed, is an element that can no more be changed or varied by any such verbal understandings or agreements than any other part of the writing, is settled by an unbroken current of authorities. *Phil. Ev., Cowan & Hills and Edward's Notes, vol. 2, page* 665, *note* 494; *Trustees, &c., vs. Stetson,* 5 *Pick.,* 506; *Woodbridge vs. Spooner,* 1 *Chitty's R.,* 661; *Cunningham vs. Wardell,* 3 *Fairfield (Maine)* 466; *Dow vs. Tuttle,* 4 *Mass.,* 414; *Fitzhugh vs. Runyon,* 8 *Johns.,* 375; *Mosley vs. Hanford,* 10 *Barn. & Cress.,* 729; *Foster vs. Jolly,* 1 *C. M. & R.,* 703; *Adams vs. Wardley,* 1 *M. & W.,* 378; *Bradley vs. Anderson,* 5 *Vt.,* 152; *Fleury vs. Roget,* 5 *Sandf.,* 646; 8 *Johns.,* 375; 5 *Vt.,* 152; 17 *Pick.,* 174; *Downs vs. Webster, Braytt. R.,* 79; *Thompson vs Ketchum,* 8 *Johns.,* 189; *Campbell vs. Hodgson, Gow.,* 74; *Wesson vs. Carroll,* 1 *Ala. R.,* 251; *Philips vs. Keener,* 1 *Litt. R.,* 329; *George vs. Harris,* 4 *N. H. R.,* 533; *Atkinson vs. Scott,* 1 *Bay,* 307; *Hamilton vs. Wagner,* 2 *Marsh. Ky.,* 331; *Bond vs. Haas,* 2 *Dall. Pa.,* 133; *Morris vs. Edwards,* 1 *Ohio,* 189; *Ib.,* 178; *Bingham vs. Rogers,* 17 *Mass.,* 571; *Austin vs. Sawyer,* 9 *Cow.,* 39; *Spencer vs. Tilden,* 5 *Cow.,* 144; *Paterson vs. Hull,* 9 *Cow.,* 747; 5 *Mass.,* 411; 16 *Pick.,* 231; *Warren vs. Wheeler,* 8 *Metcalf,* 97; *Dr. Long vs. Stanton,* 9 *Johnson,* 38; 1 *Cow.,* 249.

It is true that where different instruments are executed between the same parties at the same time, *all relating to the same subject matter*, they are to be considered together as constituting but one transaction. But in the present case, the submission papers, and the contract sued upon, have no connection whatever. *They do not relate to the same subject matter*. They are just as separate and distinct and independent of each other as can be. There is no reference, connection or allusion in the one to the other.

But even if considered together, there is nothing to be found in either, or in any other instrument, executed between

the same parties or any other parties, at that or any other time, indicating that upon any such contingency as is alleged, or any other contingency, the contract sued upon was to terminate sooner than the 15th of May, A. D., 1860.

Independent of all writings, the Defendants are endeavoring to vary the terms of the written instrument by parol understandings alleged to have existed at and before the time the contract was executed, which is against all authority.

The proposition to amend the answer as asked for, was addressed to the discretion of the Court, and the refusal of the Court to allow the amendment is not subject to review by this Court. 6 Barb. S. C. R., 308; 12 Barb. S. C. R., 215; 5 Sandf. 225; 4 Denio, 193; 20 N. Y., 81.

But even if it was, the Court was correct in its refusal to allow the amendment. The Defendants had twice amended their answer, the last time at the commencement of the trial. This was a proposition to amend for the third time, and that too in a material respect, in the midst of the trial, and it would have been an improper exercise of the discretionary power of the Court to have allowed the amendment, as is clear by all the authorities upon the subject. Furthermore, if the answer had contained an allegation as proposed by the amendment, it would not have been sufficient to let in the evidence.

An allegation "that through mistake and misapprehension," certain portions of a contract had been left out in reducing it to writing, is not sufficiently definite and specific to allow the introduction of evidence.

As the matter relative to the proposed amendment, however, cannot be reviewed by this Court, it would be improper further to discuss the subject or to cite authorities.

If it would not be traveling too far out of the case, however, we would remark that the facts clearly show that it was utterly impossible that there should have been any such understanding as is alleged, that the contract was to terminate on the 1st of September, A. D., 1857, upon the contingency claimed. Look at the matter for a moment. There had been previous dealings between the parties, and they had become involved in difficulties which they were trying then to settle by arbitration. Each party had lost confidence in the other.

Nothing but self-interest and the necessity of the case induced them to enter into a new contract. The Plaintiffs had mills which they wished to operate, and the Defendants had logs which they wished sawed. Self-interest impelled them to come to an arrangement by which one party could get the profits of running the mills, and the other of the manufactured lumber. But, as they were not on friendly terms, and each distrusted the honesty of the other, they would naturally make a new contract exceedingly specific and definite as to the rights and liabilities of the respective parties. The contract, as executed, bears upon its face evidence of great care and caution in drawing it up. It seems that the parties were over a month in getting up this contract. It is remarkable for its particularity and specificness in every respect. It is impossible, therefore, that there could have been an understanding between the parties, under the circumstances, that the contract was to terminate upon any contingency, on the first day of September, A. D., 1857, and so important a provision not be expressed definitely in the writing. The allegation of "mistake and misapprehension," and the offer to amend, was one of those desperate propositions which counsel sometimes resort to when a case is hanging heavily against them.

V.—"Defendants then offered to show the agreement and supplement set forth in the answer, to be followed up by showing breaches and damages.

"Objected to by Plaintiffs' counsel, on the grounds:

"1st. That it never was executed by the parties recited, nor binding upon any of the parties thereto.

"2d. If it ever was an agreement, it was not an agreement between the parties in this suit.

"3d. If it ever was an agreement, it formed a copartnership between the parties thereto.

"4th. That the evidence is immaterial and irrelevant.

"5th. That it would not constitute a counter-claim, set-off, or any legal defence in the action.

"6th. That the parties to said agreement and supplement are not the same parties as to this action."

Objection sustained by the Court, and exceptions taken by counsel for Defendants. *Folio 97 of case.*

The Defendants afterwards offered in evidence the same writing, dated September 2d, A. D., 1854, and the supplement set forth in the answer, without any proposition to follow them up with any other evidence, which evidence was objected to and excluded by the Court. *See folios of case* 102 *and* 103.

The Court was correct in rejecting this evidence:

1st. Because the paper called a contract, dated September 2d, 1854, which is offered in evidence, is not a contract binding upon any one, it never having been executed by the parties to be bound by it. It appears to have been intended as a contract between Lovejoy & Brockway, and John L. Lovejoy, and Dorilus Morrison, for and on account of himself, Daniel W. Bradley, Graham L. Boynton, and Washburn & Woodman. But it was never executed by or on behalf of Bradley or Boynton, and, until executed by all who were to be bound by it, it was, of course, binding upon none. And the existence of such a contract is in issue if material. Furthermore, it purports to be an instrument under seal, and the firm name of Lovejoy & Brockway is signed by J. L. Lovejoy, who was not even a member of that firm, as the answer alleges, and it is not alleged, and does not appear, that he had authority thus to sign their name, much less that any such authority was under seal. So, too, the firm name of Washburn & Woodman is signed, but by whom is not alleged and does not appear. If by one of that firm, then he alone is bound, and if by a stranger, then neither is bound, unless due authority is first alleged and shown. Clearly, then, upon the face of the instrument, it appears never to have been executed, so as to make it a contract between anybody, unless it was a contract between the plaintiffs and Morrison only, which view of the matter will be hereafter noticed.

2d. Even if it was a contract, it was not between the same parties as this suit, and its existence, or breaches of it, is is wholly immaterial in this action.

3d. If it was a binding contract, it was a partnership between the parties to it.

It appears from the instrument that some of the contemplated parties to it had saw-mills with facilities for manufacturing lumber, while others had logs to be sawed, and it was pro-

posed to use these facilities for manufacturing these logs into lumber for the joint benefit and profit of the parties concerned. From the proceeds the parties furnishing the logs were to have eight dollars per thousand feet, and five per cent. commission for selling the lumber, and the parties manufacturing were to have four dollars per thousand, besides expenses paid for piling, handling, &c., and any further sum realized was to be divided equally between them, to the extent of two dollars per thousand feet, beyond which sum the profits were to go exclusively to one party, and in case of loss it was to be sustained in the same proportion. The slabs, edgings, &c., were to be the joint property of all. This constituted a partnership.

Now upon what ground can it be claimed that these co-partnership articles between different persons than the parties to this suit, and which appear never in fact to have been executed, should have been received in evidence? We submit that the Lecompton Constitution would have been just as relevant and material.

The supplement offered in connection with it was not executed by the necessary parties, according to its own terms, to give it any validity.

Clearly, then, the offer of these writings in evidence, in whatever light they may be viewed, in connection with the proposition to "follow up" by showing breaches and damages, was properly denied by the Court. They have no connection or relation to this action, or the matter in suit.

VI. After the offer and rejection of the alleged contract, set forth in the answer, dated September 2d, 1854, the Defendants introduced a large number of witnesses, whose testimony is set forth in the case, and then made the following other offers of evidence. [See folios of the case, 154 to 161.]

"The Defendants offer to show that Dorilus Morrison, C. C. Washburne, and Cyrus Woodman, were the original parties in interest of the first part, under the agreement of September 2d, 1854. That on or about the 15th day of March, 1855, Cyrus Woodman sold, transferred and assigned all his rights and interests under said contract, to the Defendant, C. C. Washburne, and that from the date last named, until April

1st, 1856, Dorilus Morrison and C. C. Washburne have constituted the firm of D. Morrison & Co., and were the only parties in interest on the one part under said last named agreement. That on or about the 11th day of October 1855, Elihu B. Washburne, one of the Defendants in this action, purchased from C. C. Washburne and D. Morrison an interest in the business of D. Morrison & Co., under the aforesaid contract, to commence on the 1st day of April, 1856, and that since April 1st, 1856, the firm of D. Morrison & Co., consisted of Dorilus Morrison, C. C. Washburne, and E. B. Washburne, the Defendants in this action, and that they have had transferred to them in manner aforesaid, all the rights of the parties of the first part, under the contract of Sept. 2d, 1854. That between the 15th day of May, 1855, and April 1st, 1856, the plaintiffs violated the agreement of Sept. 2d, 1854, and that they did not manufacture the lumber in a merchantable manner, but unevenly and defectively. That they did not manufacture said lumber with proper economy, as required by said agreement, in that they did not saw logs into the kinds of lumber they should have done, but sawed logs that should have been manufactured into clear and higher priced lumber, into common and dimension stuff, which was of less price. That they did not run said mills at all times, as required to do by said contract, and sawed less lumber than they should have done during said period."

To which the counsel for the Plaintiffs objected, and the objection sustained by the Court, and exceptions taken by counsel for Defendants. Whereupon,

"Defendents renewed their offer last made, coupled with an offer to show the following additional facts, to wit: that the Plaintiffs knew and assented to this transfer from Woodman to C. C. Washburne, and also to the change in the firm of D. Morrison & Co., by E. B. Washburne becoming one of the parties and members of that firm, and also that these Defendants, in the transfer to them of all the rights of the parties of the first part under the contract of Sept. 2d, 1854, assumed all the liabilities growing out of said contract of the said parties of the first part thereto, all of which was done with the knowledge and assent of the said Plaintiffs in this

action, who have ever since treated and recognized these Defendants as the sole parties in interest thereto."

Which was also objected to by counsel for Plaintiffs, and objection sustained by the Court, to which counsel for the Defendants excepted. Whereupon,

"Defendants offered to show that from and after the 30th April, 1856, Dorilus Morrison, C. C. Washburne, and Elihu B. Washburne constituted the firm of D. Morrison & Co. That they were the only parties in interest under the agreement of Sept. 2d, 1854, and the supplement thereto of April 30, 1856, from and after said 31st day of March, 1856, and that they were recognized by the Plaintiffs during the years 1856 and 1857, as the parties under said agreement and supplemental agreement, and treated by them as the parties under said agreement and supplement in all things. That from April 30th, 1856, during the time said Plaintiffs continued to manufacture lumber under said agreement and supplement, they violated the terms of said agreement and supplement, in that they did not saw the lumber in a merchantable and economical manner, but sawed the same in an unmerchantable manner and unworkmanlike manner, and not with proper economy, whereby defendants were greatly damaged."

Which was also objected to by counsel for plaintiffs, and objection sustained by Court, to which the counsel for the Defendents excepted.

These propositions may be considered together.

The relevancy and materiality of the testimony offered depends wholly upon the nature and terms of the contract referred to in the offer, as dated Sept. 2d, 1854, and it is a sufficient reason for rejecting the evidence, that the contract thus referred to was not made a part of the offer, or otherwise identified, so as to enable the Court to see any relevancy or materiality of the testimony proposed.

The offer was made independent of the agreement to which it referred. It speaks of an agreement "of Sept. 2d, 1854," without any other description of it. No such agreement was in evidence, and there was nothing sufficient to indicate what agreement was referred to, or that any such was in existence,

or, if so, what its terms were, or who were the parties to it. The Court could not infer that the agreement referred to in the offer was the one previously offered in evidence and rejected, or that it was any particular agreement of that date, or if it could so infer it would not help the matter, inasmuch as no agreement was offered or presented in connection with the offer, and the Court had to pass upon the question of admitting the testimony in the shape the offer was made. The Court could not do otherwise than reject this evidence as offered.

But suppose, for argument, that the alleged contract set forth in the answer, (which is probably the one referred to,) had been offered in connection with the testimony proposed, the evidence would have been inadmissible upon a variety of grounds. In the first place, the existence of this alleged agreement of Sept. 2d, 1854, is to be treated as denied, and if produced, its execution should have been proved before it could have been received in evidence or considered by the Court under any circumstances. And, then, all the objections urged under the foregoing head against the admissibility of this alleged contract and supplement again rise in full force.

*First.*—It was never executed by all the parties, and therefore not a completed contract, and hence in no way a binding instrument upon anybody.

*Second.*—The parties to this alleged contract of Sept. 2d, 1854, are not the same as the parties to this suit, even if it was a binding instrument between anybody.

*Third.*—If it is a binding agreement, it creates a partnership between the parties to it, and conceding it to be between the same persons as the parties to this action, and that the Plaintiffs are liable thereon, such liability cannot be set up as a counter-claim by the Defendants in this action. In an action by A *vs.* B to recover money, B cannot set up as a counter-claim an alleged balance due to him from A in a former partnership transaction between them. *Ives vs. Miller*, 19 *Barb.*, *S. C. R.* 196.

*Fourth.*—The evidence proposed to be offered is, in some respects, at variance with the contract set out in the answer; and in other respects it is inadmissible on the ground of there

being no averments in the answer under which it can be received.

*Fifth.*—Another, and as we think, a further conclusive objection to the testimony offered, is this. If this agreement of Sept. 2d, 1854, is a binding instrument so as to become the foundation of an action or counter-claim, then the Plaintiffs, instead of having broken it, set up and claim that it was broken and violated by the Defendants or other parties under whom the Defendants claim, and that they are entitled to recover heavy damages on account of such breach; which view of the matter may be taken as showing that the testimony offered does not constitute a legitimate counter-claim, and which facts must also be considered as set up in the reply, as denying or avoiding the allegations in the amended answer. Now the Court will see that the Plaintiffs could not recover their damages for the breach of that contract in this action, for it would be a matter entirely foreign to the cause of action set forth in the complaint; and to litigate the rights of the parties under this contract of September 2d, 1854, to the extent of showing that the Defendents have no claim against the Plaintiffs equal to the claim of the Plaintiffs against the Defendants under it, (which would be all the Plaintiffs would do in this action,) would be a complete bar to any future action the plaintiffs might bring to recover their damages.

Where a breach of contract is alleged, and damages therefor claimed by each party respectively against the other, it strikes us as absurd, as we urged upon the Court below, that in an action by one against the other upon another cause of action, in no way connected with the contract, the Defendants can set up by way of counter-claim, the alleged breach by Plaintiffs, and damages, when it is manifest that the Plaintiff cannot be permitted to establish and enforce his rights under the contract as claimed by him. In this view of the matter alone, we submit, that the Court below was unquestionably right in rejecting the testimony offered.

VII.—The next exception found in the record, occurs in connection with the charge of the Court to the jury. The counsel for the Defendants requested the Court to instruct the jury:

*First,*—" That the measure of damages in this action for the alleged breach of the contract on the part of the Defendants, is the value of that contract at the date of the breach, the rent of the mills while they remained unemployed in the hands of the Plaintiffs, the value of Plaintiffs' services so long as they were obliged to remain unemployed by reason of such breach, and any expenses which they may have incurred directly resulting therefrom." That the said Court declined and refused so to charge in the language requested, but did charge as hereinafter stated. To which said refusal the Defendants excepted. The said Defendants' counsel also requested the Court to charge:

*Second,*—" That the probable profits which the Plaintiffs might have realized by the manufacture of lumber under the contract from the second day of September, 1857, until the first day of September, 1858, are too uncertain and dependent upon too many contingencies to form a rule of damages in actions of this character." Which instructions the Court declined to give, to which refusal counsel for Defendants excepted.

But as to the matter of damages, the Court charged among other things: " That the measure of damages in this action for the alleged breach of contract on the part of the Defendants, is the benefits or profits which the Plaintiffs would have received from the actual performance of such contract, from the second day of September, 1857, until the first day of September, 1858, but in fixing the damages to be allowed, the jury are not to take into consideration the unusual favorable character of the fall of 1857, or the spring of 1858, or any advantages on account of circumstances subsequent to the breach of said contract." To which portion of the charge the counsel for the Defendants excepted.

And the Court further charged upon the matter of damages, at the request of Plaintiffs' counsel as follows: " If the Defendants refused to furnish logs for the Plaintiffs to saw as agreed in the contract, it was a breach on their part, and the Plaintiffs are entitled to recover as damages therefor, the difference between what they were to get on what they could have sawed for Defendants pursuant to the contract during

the first year after the alleged breach, and the cost of sawing the same." To which portion of the charge counsel for the Defendants then and there excepted.

" And the Court further charged at the request of the Defendants that the jury, in estimating the Plaintiffs' damages upon the rule as laid down by the Court, must take into consideration as a part of the cost of manufacturing said lumber, the value of the labor of the men employed in and about said business, the cost of repairs, and all other expenses incident to the manufacture of lumber at these mills. Also that in estimating the probable profits, the jury must take into consideration the per centage of risks by reason of all casualties incident to the mills on account of the elements, low water and accidents of every description that would affect the capacity of said mills. And also must take into consideration the fact that the Defendants were not amenable to damages on account of not furnishing logs to said plaintiffs, when prevented by Providential acts, such as low water, floods, &c."

The refusal of the Court to charge the jury, as above requested by counsel for the Defendants, and the correctness of the charge as above given, simply involves the same question that was raised by Defendants' counsel in objecting to the testimony offered by Plaintiffs to show their damages by reason of the breach of the contract, and which we have hereinbefore considered under the third head. We have therefore only to refer the Court to what we have there said and the authorities there cited. The charge of the Court in this respect corresponds with the rule of damages as determined upon in the introduction of the testimony.

The counsel for the Defendants also further requested the Court to instruct the jury—

*Third,*—" That if the jury finds that the Defendants suffered damages by reason of the want of economy and improper manner in which Plaintiffs manufactured their lumber in 1857, the presumption is that they would have continued to manufacture in the same manner as long as they run said mills. And in estimating damages against the Defendants, for the alleged breach of contract, the jury must take into consideration the damages which it is presumed the Defend-

ants would have continued to suffer had Plaintiffs continued to saw."

Which request the Court declined to grant, and Defendants' counsel excepted.

The counsel for the Defendants will not of course urge upon this Court that there was any error in refusing this third request. It needs no argument.

The Court was further requested to instruct the jury by Defendants' counsel—

*Fourth.*—"That if the jury find that the Plaintiffs were not manufacturing said lumber in a proper manner, and with prudence and economy, so far as the mills would cut, and the logs would make the same, then the Defendants were absolved and released from furnishing to Plaintiffs any more logs under said contract."

Which the Court declined to give in the language requested, but did charge as follows :

"That if the Plaintiffs were not manufacturing said lumber in a proper manner, with prudence and economy, so far as the mills would cut and the logs would make the same, and if the Defendants objected to the said faulty manufacture, and the Plaintiffs thereafter either neglected or refused to manufacture the same in a proper manner and with prudence and economy, then the Defendants were absolved and released from furnishing to Plaintiffs any more logs under said contract. But if the jury finds that the Defendants, knowing the manner in which said lumber was manufactured, accepted the same without objection, and assigned another and different reason for refusing further to furnish logs under said contract, then, and under those circumstances, even if the lumber was not properly manufactured, that fact would not absolve or release the Defendants from performing their part of the contract."

To which counsel for the Defendants excepted.

There can be no doubt as to the correctness of the law as above held and laid down by the Court. The authorities are to the point and uniform. *Wilkins vs. Stevens*, 8 *Vt.*, 214; 25 *Wend.*, 665; 26 *Vt.*, 87.

The counsel for the Defendants further requested the Court to instruct the jury—

*Fifth.*—" That the Plaintiffs cannot recover damages in this action, by reason of the alleged breach of contract on the part of Defendants in not furnishing logs after September 2, 1857, because they have neither averred nor proved a present or continuing readiness and ability to perform said contract on their part."

Which request the Court declined to grant, and counsel for Defendants excepted.

Counsel for the Defendants further requested the Court to charge—

*Sixth*—" That even had Plaintiffs averred and proved a present readiness, having rendered the possession of the mills to the owners on or about the 12th day of December, 1857, they cannot recover damages on account of the alleged breach by the Defendants after that date."

Which request was refused by the Court, and counsel for the Defendants excepted.

These requests are only again raising the question which was urged by counsel for the Defendants, against the admissibility of evidence offered by Plaintiffs, and which we have hereinbefore considered under the *second* head. The authorities which we have before cited conclusively show that the action may be brought immediately upon the breach, and that it is not necessary to remain in readiness until the expiration of the time the contract had to run. *Durkee vs. Mott.*, 8 *Barb.*, 426; 2 *Denio*, 609.

Counsel for the Defendants next requested the Court to instruct the jury—

*Seventh and Eighth.*—" That if the Plaintiffs' damages are to be measured by the probable profits which they might have realized in the manufacture of lumber under this contract, from September 2, 1857, till September 1, 1858, then in estimating these profits the jury must take into consideration, as part of the cost of the manufacturing said lumber, the rent of these mills, and value of Plaintiffs' services, during said period, as a part of the cost of manufacturing said lumber."

Which request the Court declined to grant, but did instruct the jury as follows :

" That if between the 2d day of September, 1857, and the

1st day of September, 1858, the Plaintiffs, or either of them, were engaged in any business from which they realized any gain or profit, or in which their services were of any value to them, then the jury must take into consideration such value of the Plaintiffs' services during that period as part of the cost of manufacturing said lumber." And " That the re-entry of the lessors under the lease to Plaintiffs, in December, 1857, did not absolve them from the payment of rent beyond the date of such re-entry."

To which refusals to charges requested, and to the instruction as given, counsel for the Defendants excepted.

There was no error of the Court in refusing to instruct the jury as above requested, or in the instructions as given.

Counsel for the Defendants further requested the Court to instruct the jury—

*Ninth.*—That under the pleadings in this action, it stands admitted that Plaintiffs were not bound to saw any logs for Defendants under any contract since February 3d, 1857, and such being the case, there being no mutuality of obligation, the Defendants were not bound to supply Plaintiffs with logs. And—

*Tenth.*—" That the re-entry by the lessors under the lease to the Plaintiffs in December, 1857, absolved the Plaintiffs from payment of any rent beyond the date of such re-entry."

Which request the Court refused and the counsel for the Defendants excepted.

We see no grounds upon which it could be expected that the above ninth request would be complied with. The tenth request was also properly refused, because there was no allegation in the answer or issue in the case making it material. And furthermore, it is true in point of fact, even as between the Plaintiffs and the Water Power Company, (the Plaintiffs' lessors,) for by an express provision in the lease the Plaintiffs are not to be absolved from the rent by a re-entry by the lessors.

The Court further instructed the jury among other things as follows :

" If the Defendants Morrison & Co., knowing the manner in which the lumber was manufactured, accepted and received

it from the Plaintiffs, without finding fault, and as a compliance with the contract on the part of the Plaintiffs in respect to its manufacture, the Defendants are precluded from now saying it was not well manufactured." To which counsel for the Defendants excepted.

There can be no question as to the correctness of the law as above given to the jury by the Court, as we have before shown by the authorities cited in commenting upon the fourth request of Defendants' counsel to the Court to charge the jury, and the charge as there given.

F. R. E. CORNELL, with BIGELOW & COOPER, Counsel for Appellants.

SMITH & GILMAN, Counsel for Respondents.

*By the Court*—EMMETT, C. J.—The complaint sets out in full, a contract under seal, dated March 31, 1857, between the Plaintiffs as parties of the first part and Defendants as parties of the second part, whereby the Plaintiffs agree to run, operate and use for manufacturing lumber, exclusively for the Defendants, certain mills situated at St. Anthony, from the date of the contract until the 15th day of May, A. D. 1860. And the Defendants thereby agreed to furnish a sufficient quantity of logs to keep said mills in full operation during said period, and to pay to the Plaintiffs at the rate of five dollars per thousand feet, for sawing pine lumber, and seven dollars per thousand for hard wood. The Defendants were also to have the use of a lathe and a shingle machine, connected with the mills, and certain water power for which they were to pay a stipulated rent. They were also to take, if they elected so to do, certain logs which the Plaintiffs then had, at a price agreed upon.

The action is brought to recover an alleged balance due from the Defendants to the Plaintiffs for rent, logs furnished, and manufacturing done under said contract, and also damages alleged to have accrued by reason of the Defendants refusing, on and after a certain date, to furnish logs to keep said mills in operation.

The Plaintiffs allege a full compliance on their part, and that they continued to manufacture up to the 2d day of September, 1857, at which time the Defendants refused further to supply the mills as provided by the contract. They claim a balance due them at that time for sawing or manufacturing, and for rent of the lathe and shingle machine, and logs furnished under the contract, of $10,000. And also that they have sustained damages, in the sum of $101,531, accruing to them between the said 2d day of September, 1857, and the 1st day of September, 1858, by reason of the Defendants refusing to furnish logs for the mills to manufacture after September 2, 1857.

The Defendants admit the making of the contract, but deny that there is anything due the Plaintiffs for rents, logs, or manufacturing as alleged. They also allege that by an understanding and agreement between the parties, had and made prior to and contemporaneous with the making of the agreement set forth in the complaint, the said agreement was connected with and based and dependent for its continuance, upon certain articles of submission to arbitration, executed by the parties at the same time, by which all matters of difference existing between the parties and arising out of a prior contract, were submitted to arbitrators for settlement. That the contract mentioned in the complaint was but one part of the general plan of compromise, and was to cease and become inoperative, in the event that the arbitration failed; and that the arbitrators under said submission having failed to agree, they, the Defendants, were absolved from the operations of the contract sued upon.

The Defendants set forth the contract upon which the submission to arbitration arose; allege various breaches thereof by the Plaintiffs, and the damages sustained thereby, and set it up as a counterclaim against the demands of the Plaintiffs.

They further aver sundry breaches, on the part of the Plaintiffs, of the contract sued upon, and allege certain damages therefrom, which they also set up as a counterclaim to the Plaintiffs' demands.

The action was tried by a jury. The Plaintiffs obtained a verdict in their favor. The Defendants made a motion for a

new trial upon a case prepared and settled as provided by statute; which motion being overruled, the case is brought to this Court by an appeal from the order denying a new trial.

The Appellants have deemed it necessary to raise each of the points made in the record separately, and for this reason perhaps, an unusually large number is presented, but, as very many of them refer to the same general questions or propositions, we do not think it essential that the various points should be considered in detail. We shall therefore confine ourselves to the general questions involved, or to such of them as appear to us material to the decision to which we have come.

The Defendants first allege that the Court erred in admitting Haus and excluding Huy from the panel of jurors.

Both were challenged by the Defendants for actual bias. In the case of Haus, the question of bias was by consent submitted to the Court and upon trial the challenge was found to be untrue. We consider this finding as conclusive under the statute; but even if it were not, we see nothing in the facts elicited upon the examination of the juror, showing actual bias.

In regard to the exclusion of Huy, the Defendants' challenge was admitted by the Plaintiffs, and there was therefore nothing to try. We think the Court very properly refused the Defendants permission to examine the proposed juror, while the challenge remained, and the facts upon which it was grounded were not denied. It is only when the facts are denied that the statute provides for a trial. *Comp. Stat.*, 775, *section* 28.

The Defendants however asked leave to withdraw the challenge. But this the judge refused to grant, and this refusal is alleged as error. We regard the application to withdraw the challenge as addressed to the discretion of the judge, and his action thereon cannot be reviewed in a superior Court, without express authority therefor given by statute, which authority we are unable to find.

We are aware that it has been asserted, that if a Court arbitrarily and without any sufficient reason set aside a juror properly selected, it will be ground for error. *Hine vs. The*

*State*, 8 *Humph.*, 597, (*cited in* 2 *Gra. on New Trials*, 194.) But that evidently was on the ground of a gross abuse of discretion, which is far from being true of this case. On the other hand Judge Story, in a case where on trial for murder two jurors, members of the Society of Friends, were set aside upon a mere suggestion of the fact, without examination as to their belief in regard to capital punishment, refused to set aside the verdict, and said that "even if a juror has been set aside for an insufficient cause, I do not know that it is matter of error, if the trial has been by a jury duly sworn and empannelled and above all exception. Neither the prisoner nor the government in such a case have suffered any injury." 2 *Mason*, 91. We think the doctrine and reasoning of Judge Story apply with peculiar force to the case at bar ; for here too there has been a trial by a jury duly sworn and empannelled, and so far as we are advised above all exception.

There are other points made by the Defendants for the purpose of showing that the Court erred in refusing to permit them to prove by parol, according to their several offers, the understandings and agreements of the parties at and prior to the execution of the contract on which action is brought. These different offers are in substance identical, though varying somewhat in form. They were directed to certain allegations of the answer and avowedly for the purpose of showing that the contract sued upon was to terminate in a certain contingency, before the period fixed by the contract itself, and that such contingency had happened before the breach complained of. It is however unnecessary to recapitulate them here, nor do we propose to discuss the several points and exceptions made to the rulings of the Court on the questions here involved, nor to review the mass of authorities to which we have been referred, because the view which we have taken on other points renders such a course unnecessary. Suffice it that in our opinion these several offers, however varied in form, were simply attempts to vary by parol the terms of the written contract, of which that concerning the time the contract was to continue was amongst the most material; and that all such evidence was properly excluded. And as to the offer of the Defendants to so amend their answer as to avoid

the objection above named, and to show that what they offered to prove was omitted in writing the contract, through mistake and misapprehension, and their prayer for leave to reform and correct the contract in that respect; we think that the refusal of the judge to permit such amendment and reformation affords no ground for reversal. The application was addressed to his discretion, and there is no just ground for claiming that, in the decision which he made, this discretion was abused.

We are unable also to discover error in the Court refusing to receive in evidence the submission papers referred to in the Defendants' answer. They do not appear to us to refer to the same subject matter as the contract sued upon, though executed the same day, or at the same time. There is no reference in the one to the other. The one relates to a settlement of difficulties existing between the parties, growing out of their transactions under a former contract; the other relates wholly to matters subsequent. The arrangement was quite natural. Differences had arisen between the parties as to their respective rights and liabilities under a prior contract, and they submit those differences to arbitrators, making an entirely new contract as to the future. The new contract does not by its terms, depend in the least degree upon the success or failure of the arbitration, nor is there any necessary connection between them. Each seems distinct and perfect in itself. And if the arbitration fails and the submission papers do not afford a remedy, the parties respectively have their remedy on the agreement to which the arbitration referred.

During the trial the Defendants further offered in evidence, the prior agreement set up in the answer, dated Sept. 2, 1854, and the supplement thereto, and proposed to follow them up by proof of breaches on the part of the Plaintiffs and of the damages which the Defendants sustained thereby; but upon the Plaintiffs objecting thereto, the Court sustained the objection. They then offered in evidence said agreement and supplement, without any evidence of breaches or damages, but with no better success. And it is now urged that the Court erred in excluding such evidence.

The object of these several offers, was, doubtless, to estab-

lish the counter-claim set up in the answer; and whether the Court was right in rejecting the evidence may be determined by the sufficiency of the counter-claim as alleged.

It will not be seriously contended that the facts stated in the answer would constitute a valid set-off or counter-claim under the practice as it formerly stood; and if they are sufficient now, it is by virtue of the statute alone. The statute authorizes the defendant to set up a counter-claim by way of defence, and defines the nature of such counter-claim to be one existing in favor of the Defendant and against the Plaintiff, between whom a separate judgment might be had in the action, and must arise out of the following causes of action:

1. A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the Plaintiff's claim, or connected with the subject of the action.

2. In an action arising on obligation, any other cause of action also arising on obligation, and existing at the commencement of the suit. *Comp. Stat.* 541, *sec.* 71.

The first clause covers those cases which would have formerly fallen under the head of recoupment, and to some extent enlarges the operation of that class of cross claims. The Defendants' claim in this action arising under a contract entirely distinct from that upon which the Plaintiffs' claim is founded, and not being connected with the subject of the Plaintiffs' action, could not be brought in under the first clause.

The second clause, however, is, in our judgment, broad enough to cover the counter-claim set up by the Defendants. The word "obligation" as used in the statute, means contract, and comprehends all causes of action arising *ex contractu*, as distinguished from causes of action arising *ex delicto*. Any other construction would be at variance with the purpose of the code, which, throughout its entire scope and spirit, is aimed at the consolidation instead of dispersion of actions. It blends the Courts of Law and Equity, and permits, even enjoins the litigation and settlement of all equities existing between parties to an action, in one suit, which formerly could be only enforced by way of cross action or cross bill. *Comp. Stat. p.* 481. *secs.* 23-4. It permits but one form of action for the settlement of all claims of a private nature.

*Comp. Stat. p.* 532, *sec.* 1; *p.* 480, *secs.* 19-20. This affords every reason to believe that it was not intended to restrict the number and character of claims that might be litigated in one action by the use of the word "obligation" in describing counter-claims. It is a term open to several interpretations. In its general and most extensive sense it is synonymous with duty. In a more technical meaning, it is a tie which binds us to pay or to do something agreeably to the laws and customs of the country in which the obligation is made. It also signifies the instrument or writing by which the contract is witnessed. It is also defined to be a deed whereby a man binds himself under a penalty to do a thing; and the word in its most technical signification, *ex vi termini*, imports a sealed instrument. *Bouvier's Law Dic. Vol.* 2., *Obligation.* It is needless to say that a much more appropriate word might have been selected to convey the intention of the codifiers ; but that is not to the purpose. We must give it such application as is in harmony with the spirit of the change sought to be made in the practice. Should we hold that it meant a sealed instrument exclusively, or even a written contract, we would abridge the former rule of set-off very materially, and exclude many causes of action upon contracts express and implied to the interposition of which by a defendant, no philosophical objection has ever, nor can be successfully urged. Should we adopt the most extended signification the term will bear, we would introduce disorders into the practice which must readily suggest themselves to any mind at all familiar with the science of the law. We are of opinion that it was designed to enlarge the doctrine of set-off so as to include all causes of action arising *ex contractu,* whether the damages are liquidated or unliquidated, and that the Defendants' proof should have been received.

The remaining points made by the Defendants so far at least as we deem them material to the decision of the case, relate to the rule by which the damages sustained by the Plaintiffs, by reason of the failure of the Defendants to furnish lumber to be manufactured under the contract are to be measured. They refer as well to the rulings of the Court upon the admission and rejection of evidence touching these

damages, as to the instructions given and refused to be given to the jury on that question.

After a careful examination of the law in regard to the measure of damages in cases of this kind, in which we have been greatly enlightened by the thorough discussion which counsel on either side gave to the question, we cannot resist the conclusion that the Court below erred in refusing to instruct the jury, that, in estimating the profits which the Plaintiffs might have realized in the manufacture of lumber under the contract, from Sep. 2d, 1857, to Sep. 1st, 1858, they should take into consideration, as a part of the cost of manufacturing, the rent of the mills during said period.

When one party to an executory contract like that on which this action is brought, refuses further to comply with it on his part, the other party has an immediate cause of action for said breach; and may sue at any time and recover the damages which he may have sustained, by being deprived of the benefits accruing to him under it; or he may treat the contract as continuing, and, by holding himself in readiness to perform on his part, may, from time to time, or at the expiration of the contract, sue and recover for the damages which he may have sustained at the time of the action. But the rule of damages differs materially according to the course pursued. If he treat the contract as ended and sue immediately upon the breach, his damages are to be measured by the value of the contract to him at the time it was broken; and this value is estimated by the profits which he would have realized during the continuance of the contract, had it been faithfully carried out by the parties. But in estimating the profits which a party under such a contract would realize, allowance must be made for every item of cost and expense necessarily attending a full compliance on his part. If, therefore, the contract is for manufacturing a given article, and mills and machinery are necessarily employed in making it, the reasonable or usual rent, or value of the use of such mills or machinery enter into the costs of manufacture, and should be taken into consideration in estimating the profits, because the profits are as directly affected by such expenses as by any other.

But should the party who is not in default pursue the other course, and, treating the contract as continuing, hold himself and his mills and machinery in readiness, and maintain his ability to perform the contract on his part; then his damages cannot be measured by the profits alone, which would probably have accrued to him; because they will not compensate him for the injury he has sustained. Let us suppose by way of illustration, an executory contract for the manufacture, at a given price, of some article which can be made by the use of mills and machinery only; and that the contract is to continue one year. That the use of the mills and machinery, or the reasonable rent therefor for the term, is $10,000, and the other expenses necessarily attending the production of the article, would amount to $30,000, and that, at the contract price, the gross earnings of the manufacturer during the time would amount to $50,000. Here, then is a clear profit of $10,000 to the manufacturer; and if the other party should refuse to comply with the contract, and the manufacturer should also abandon it and sue for damages, these prospective profits would cover all the loss which he has really sustained. But then he may not desire or be in a condition to abandon the contract. He may have been at the expense of erecting mills and machinery to carry out the contract on his part; or may have rented them for the term, for the same purpose; and if, under such circumstances, he still holds himself and his mills and machinery in readiness, and maintains his ability to perform on his part during the time fixed for the continuance of the contract, it is clear that the $10,000 profit which he might have made would not cover his loss; for it would exhaust the whole of that sum to pay the rents which he has incurred, and he would derive no benefit whatever from his contract. And if, in the case supposed, the profits were $5,000 instead of $10,000, and the amount of damages which the party could recover were limited to the profits merely, he would be behindhand on the rent alone some $5,000, after applying towards its payment all the damages which he could recover.

If, therefore, the Plaintiffs in this action, after the Defendants had refused longer to furnish logs for the mills to manufacture, had kept the mills in readiness to perform the

contract on their part, up to the said 1st day of Sep. 1858, and had made proper allegations and proofs to that effect, the instruction which the Court gave to the jury in regard to the rents of the mills in the meantime, would have been correct, although the mills may have remained idle during the whole period.

But we regard this action as one in which the Plaintiffs treat the contract as at an end, and sue to recover for the price of the work previously done, and materials, &c., furnished under it; and for damages sustained by reason of the Defendants' abandonment after the 2d day of September, 1857. They do not allege a present and continuing readiness, willingness or ability to perform the contract after the alleged refusal of the Defendants further to furnish the mills. The general averment that "they have at all times and in all things kept and performed their contract" is made before any breaches are assigned, and evidently refers to what was done prior to the abandonment of the contract by the Defendants on the 2d day of September, 1857. It is true that they allege and endeavored to prove that damages to the amount demanded for this cause of action, accrued to them during the time transpiring between the abandonment by the Defendants and the 1st of September, 1858, and predicate these damages upon the profits which they would have made during said time, but then it was their own fault that their allegations and proofs were thus limited. They were at liberty to claim less than they were entitled to, and to confine their allegations and proofs to any time within that limited by the contract.

The complaint, as to this cause of action, omitting the special allegations as to when and how the damages accrued, is, in form, about as the pleader would have drawn it, had the action been commenced immediately after the 2d of September, 1857, when the breach complained of occurred. There are no allegations upon which to found a claim for damages beyond the prospective profits which the Plaintiffs would have made out of the contract. They do not, as before stated aver that they held the mills in readiness to manufacture lumber for Defendants during any particular time after the 2d of

September, 1857, while the proofs show that soon after the Defendants refused to proceed under the contract, the Plaintiffs put it out of their power to comply on their part, by surrendering the mills to their lessors.

It is in this view of the case that we regard the several objections of the Defendant, predicated upon the omission of Plaintiffs to allege and prove a present and continuing readiness and ability to comply on their part as unimportant. The Plaintiffs, without such allegations or proofs had a right to recover damages for the injury sustained, to be estimated by the value of the contract to them at the time of the breach, or by the profits which they could have realized under it.

If, as we have before stated, the Plaintiffs had held the mills in readiness to manufacture lumber for the Defendants under the contract, up to the said 2d day of September, 1858, and then sued for the damages sustained up to that time, making proper allegations and proofs of the fact of such continuance, readiness and ability, the rule of damages would have been different as we have endeavored to show. The charge of the Court in regard to excluding the rent of the mills from the consideration of the jury, would then have been correct. But as the pleadings stand, we hold that the damages which the Plaintiffs sustained by the breach under consideration are to be measured by the profits which would have accrued to them had the contract been faithfully kept by the Defendants, and that the jury should have been instructed that in estimating these profits the rent of the mills should be taken into consideration as part of the cost of manufacturing the lumber.

There must be a new trial of the case.