\*JAMES A. LOVEJOY et al vs. DORILUS MORRISON et al.

L. and M. entered into a contract whereby M. was to furnish logs and L. to run certain mills for a specified time, for the purpose of manufacturing said logs into lumber for an agreed price. In an action by L. for a breach of the contract by M. in refusing to furnish logs or to pay for the work done, &c., the complaint set out at length a lease and supplement thereto under which L. held the mills under the St. A. W. P. Co., and the plaintiffs claimed as part of their damages the rate of rent agreed to be paid by the terms of the lease and supplement, from the time of the breach till the expiration of the contract to manufacture. *Held*—that the lease and supplement, together with other allegations of the

---

\*Mr. Justice McMillan, being of counsel in this case, took no part in its hearing or determination.

complaint by which the plaintiffs seek to charge the defendants with the particular rent specified in the lease and supplement as part of their damages, were irrelevant and redundant, and therefore properly stricken out.

This is an appeal from an order made by the District Court of Hennepin County striking out certain portions of the complaint on motion of defendants. A sufficient statement of the case appears in the opinion of the Court.

SMITH & GILMAN for Appellant.

H. R. BIGELOW and F. R. E. CORNELL for Respondent.

*By the Court*—BERRY, J.—This action is brought to recover damages arising from the breach of a contract, set out in full in the complaint, and entered into by and between the appellants as parties of the first part, and the respondents as parties of the second part. It appears that the appellants agreed to operate certain mills in St. Anthony for a specified time, for the purpose of manufacturing lumber for the respondents, and that the respondents agreed to furnish logs for the same and pay the prices specified in the contract for the work, which agreement it is alleged they failed to perform. The mills were leased to the appellants by the St. Anthony Falls Water Power Company, and the lease together with a supplement thereto, are set out at length in the complaint. A motion was made in the Court below to strike out the lease and supplement on the ground of redundancy, irrelevancy and repugnancy. And the same were ordered to be stricken out as irrelevant and redundant. We think the order was right. The counsel for the appellants contend that " the lease and supplement thereto were set forth in the complaint as allegations to show the tenure by which the plaintiffs held the mills, *and more particularly* the rents they were paying therefor." Then follows the allegation (ordered stricken out) "that by the breach of the contract the mills were left upon our hands unemployed and we subjected to said rents, which therefore constitute a part of the damages

sustained." Now, we apprehend that it was entirely immaterial on the question of damages what rents the appellants had agreed to pay or were paying for the mills. We do not understand the decision in 6 *Minn.*, 319, as the counsel appears to do. In that case, *p.* 354, the Court make use of the following language : " If, therefore, the contract is for manufacturing a given article, and mills and machinery are necessarily employed in making it, the reasonable or usual rent or value of the use of such mills or machinery enter into the cost of manufacture and should be taken into consideration in estimating the profits, because the profits are as directly affected by such expenses as by any other." And when in the conclusion of the opinion the Court say that " in estimating profits the rent of the mills should be taken into consideration as part of the cost of manufacturing the lumber," we think it is clear (taking the whole opinion together) that the word " rent" was intended to signify the value of the use of the leased premises, and not the particular rent which the appellants had agreed to pay.

The respondents had nothing to do with the lease and supplement. They were not parties to them and had no control over them whatever. Whether the appellants agreed to pay too much rent or too little, whether the conditions of the lease were favorable or unfavorable to the lessees, were matters of no concern to the respondents. They agreed to furnish logs for the mills and to pay certain prices for manufacturing the same into lumber, and did not agree to be responsible for the good or bad bargains of the appellants with third persons, whether those bargains were made for the purpose of carrying out the contract with the respondents or for other purposes. In our view of the matter, then, the lease and supplement were not material allegations in the complaint, but were irrelevant and redundant and therefore properly stricken out. *Pub. Stat.* 543, *sec.* 89 ; 542, *sec.* 80.

The other allegations ordered stricken out were as follows : " and had the defendants complied with the same," that is, with the terms of the contract, " on their part, the said parties of the first part to said contract would have been enabled to pay from

the earnings of said mills the rents therefor to the said Water Power Company, pursuant to the terms of said lease and supplement, but that by reason of the said breach of said contract said mills were left upon the hands of the said parties of the first part to said contract, idle and unemployed, and said parties of the first part to said contract with the defendants subjected to liability to said Water Power Company for said rents upon said lease and supplement, and thereby damaged in this respect to the amount of said rents so to be paid from and after September 2d, 1857, to-wit, in the sum of sixty-nine thousand three hundred dollars." Now, if the lease and supplement were, as we have already determined, irrelevant, because so far as rent was to be taken into account in estimating profits and damages, it was the value of the use of the mills which was material, and the particular price which the appellants had agreed to pay to the St. Anthony Water Power Company was entirely immaterial as a price, then it follows as a matter of course that the allegations just quoted were equally irrelevant, and must fall with the lease and supplement. Perhaps it is well to say here that we discover no claim in the complaint that the appellants kept the mills in readiness to fulfill the contract on their part after the alleged breach by the respondents. Under the decision in 6 *Minn.*, already cited, this might make an important difference in the cause of action and amount and nature of damages. In confirmation of the views which we have expressed we refer to a few authorities. *Masterton & Smith vs. Mayor &c., of Brooklyn, reported in* 7 *Hill,* 62, seems to be regarded as a leading case upon the subject of damages for the breach of executory contracts. Opinions were given by each of the three judges composing the Supreme Court at that time, (Justices Nelson, Bronson and Beardsley), and so far as the doctrines to which we shall refer are concerned, all of them concurred. The case has been followed in New York, and so far as we discover has escaped criticism. 2 *Selden,* 85. Sedgwick refers to it approvingly in his work on Damages, *pp.* 73, 238, 364. It is also approved by Judge Curtis in *P. W. & B. R. R. Co. vs. Howard,* 13 *How.,* (*U. S.*) 307, 344; in *Fox vs. Harding,* 7

*Cush.*, 523 ; and in 3 *Parsons on Contracts, 5th Ed.*, 184. The facts of the case were "that the plaintiffs contracted to procure, manufacture and deliver at their own cost and expense all the marble necessary for a certain public building then about to be erected by the defendants, the same to be of the best quality from the quarry of Kain & Morgan, in consideration whereof the defendants agreed to pay the plaintiffs a specified. sum of money in installments. The plaintiffs immediately entered into a contract with Kain & Morgan by which the latter, in consideration of a stipulated compensation to be paid by the former out of moneys expected from the defendants, agreed to furnish the marble. The plaintiffs delivered and received pay for about one-sixth of the marble, according to the contract, and the defendants then suspended operations upon the building, refusing further to perform on their part," and thereupon the plaintiffs brought their action for the breach of the agreement and damages. It is well to observe here that in the case before us the lease was entered into six months before the contract between the parties to this action was executed, although the supplement was subsequent, while in the case cited, the contract with Kain and Morgan was entered into after the consummation of the agreement with the authorities of Brooklyn, and for the very purpose of carrying that agreement out. On the trial at the circuit the contract with Kain and Morgan was read in evidence by the plaintiff subject to the right of defendants to object to its admissibility during the progress of the cause. "When the plaintiffs rested the defendants moved that all the testimony in relation to the contract of Kain and Morgan with the plaintiffs, and the contract itself be excluded from the consideration of the jury as irrelevant ;" but the motion was overruled and exceptions taken. The circuit Judge among other things, charged the jury that "the plaintiffs' contract with Kain and Morgan if made in good faith was entered into as a reasonable part of the performance by the plaintiffs of their own contract, and if the defendants by stopping the work, obliged the plaintiffs to break their contract with Kain and Morgan, then the damages on the latter

ought to be allowed to the plaintiffs, who would be responsible to Kain and Morgan for the same." This was excepted to by the defendants.

The Chief Justice in giving his opinion on appeal says: "It will be seen that we have laid altogether out of view the sub-contract of Kain and Morgan, and all others that may have been entered into by the plaintiffs as preparatory and subsidiary to the fulfillment of the principal one with the defendants. Indeed I am unable to comprehend how these can be taken into the account or become the subject of consideration at all in settling the amount of damages to be recovered for a breach of the principal contract. The defendants had no control over or participation in the making of the sub-contracts, and are certainly not to be compelled to assume them if improvidently entered into. *  *  *  *  In any aspect, therefore, these sub-contracts present a most unfit as well as unsatisfactory basis upon which to estimate the real damages and loss occasioned by the default of the defendants." A new trial was granted. Aside from the weight of this decision as authority we think the reasoning of the Court commends itself to sound common sense. The order appealed from striking out certain portions of the complaint is affirmed and the case remanded.