————————o————————

## Dunn and Another *v.* Johnson.

PLEADING.—*Evidence.*—*Error Cured.*—Suit on a contract for the delivery by the defendant of a certain number of saw-logs to be sawed by the plaintiff at a stipulated price per hundred feet, the breach alleged being the failure of the defendant to deliver a portion of the logs.    Answer, that the defendant delivered a certain number of logs, which the plaintiff sawed in such an unworkmanlike manner that the lumber was worthless, and, the plaintiff refusing to saw properly, the defendant refused to deliver more logs. Reply, the general denial.    On the trial, after the defendant had offered evidence tending to sustain said answer by proving that the lumber was bad, the plaintiff offered evidence tending to show that the logs delivered were such that good lumber could not be made from them.    This evidence of the plaintiff was rejected until an additional reply alleging the fact had been filed, by leave, over the defendant's objection, when, a demurrer to the additional reply having been overruled, said evidence of the plaintiff was admitted and the trial proceeded, the jury not having been resworn, and the defendant objecting.

*Held,* that the evidence should have been admitted when first offered under the reply in denial; that the additional reply did not change the issue, and there was no necessity for reswearing the jury; that the demurrer to the additional reply might properly have been sustained, or the paragraph to which it was filed might have been stricken out on motion, or leave to file

it should not have been given; yet that no wrong resulted from these proceedings.

CONTRACT.—*Breach.*—*Damages.*—A. contracted to saw into lumber for B., at a stipulated price per hundred feet, to be paid at certain periods, a certain number of logs to be furnished by B. at A.'s saw-mill.

*Held,* in a suit by A. against B. for the failure of the latter to deliver a portion of the logs as agreed, that the fact that the plaintiff sold his saw-mill after he had been notified by the defendant that the latter would pay for no more sawing and deliver no more logs, or that the plaintiff made a subcontract with a third person to saw the logs that might be delivered, could not affect the right of recovery or the measure of damages.

SAME.—*Measure of Damages.*—On the breach of such an executory contract, without sufficient cause, the measure of damages is the difference between the contract price of the entire work to be done and the reasonable cost of the work, at the ordinary prices, in labor, in wear and tear of machinery, in time of use of machinery, and in value of superintendence. The profits which have been realized by a sub-contract made with a third person to do the work, or which might have been realized by such a sub-contract if made, cannot be taken as evidence of such damages. This rule applies alike to public and private contracts, on a large or small scale. *Jones* v. *Van Patten,* 3 Ind., 107, overruled.

SAME.—*Reduction of Damages.*—*Burden of Proof.*—In such a case, the burden rests upon the defendant of proving, in reduction of the damages estimated by such rule, that the plaintiff could have procured other work from which profits would have accrued.

APPEAL from the Marion Common Pleas.

RAY, J.—This was a suit upon a written contract brought by the appellee against the appellants, for sawing lumber for them and for a failure to deliver logs to be sawed into lumber, as they had contracted by a written agreement whereby they agreed to furnish at the plaintiff's mill one thousand saw-logs to be sawed by the plaintiff at seventy-five cents per hundred feet, payment for the sawing to be made every two weeks, the plaintiff to pile the defendants' lumber separate from other lumber. This contract bore date on the 3d of January, 1865. The breaches alleged were a failure to pay for lumber sawed as agreed and a failure to deliver a portion of the logs. The suit as tried was compounded of two suits—one commenced on the 26th of January, 1866, and the other on the 25th of May, 1866, which were, on the 28th of June, consolidated by agreement.

The answer was in seven paragraphs. The first was the general denial; second, payment; third, that the plaintiff refused to perform his contract to saw, whereby the defendants were damaged one thousand dollars, which they demand, as and by way of counter-claim; fouth, as to failure to deliver logs, that plaintiff had broken the contract by refusing to saw or let defendants take away their lumber sawed. The fifth paragraph need not be noticed, inasmuch as it has n/ bearing upon any question here. The sixth paragraph was, that the defendants delivered five hundred logs, which the plaintiff sawed so badly and unworkmanlike that the lumber made was worthless, and the plaintiff refusing to saw properly, the defendants, as they lawfully might, refused to deliver more logs. The seventh need not be noticed. The plaintiff replied by general denial.

On the trial, after the defendants had offered evidence tending to show the unworkmanlike character of the sawing done, by proving that the lumber sawed was bad, the plaintiff offered evidence tending to show that the logs of which the lumber was manufactured were of such a character that good lumber could not be made of them. This evidence was refused until the plaintiff, by leave, over the objection of the defendants, filed an additional paragraph of reply avering the fact, which was unsuccessfully demurred to, and then the evidence was admitted, and the trial went on, the jury not having been resworn, and the defendants objecting. This is urged as an irregularity for which a new trial should have been granted, as was demanded below, and it is also claimed that the demurer should have been sustained. We think not. The evidence ought to have been admitted when first offered. It merely tended to disprove what the defendants were insisting upon—that the lumber was bad because of unskilful sawing. It tended to show another and a different cause for the bad quality of the lumber, and one for which the plaintiff was not responsible. It follows that the additional reply did not change the issue, and was therefore harmless, and that there

was no necessity for reswearing the jury; and that though the demurer might properly have been sustained, or the paragraph stricken out on motion, or leave to file it should not have been given, yet no wrong resulted from the whole of these proceedings. They were steps by which the erroneous refusal of the evidence was corrected. Such seems to have been the final opinion of the presiding judge, when the motion for a new trial gave opportunity for fuller deliberation than was afforded when these various rulings were first made.

The verdict was for the plaintiff, assessing his damages at $836.40, and it appeared by answers of the jury to interrogatories submitted to them that they made up the aggregate of damages thus assessed as follows: balance not paid on lumber sawed $393.50, and $442.90 damages for failure to deliver logs as per contract.

There was evidence showing that before all the logs which the defendants had delivered were sawed, the plaintiff sold his saw-mill to one Pollard and delivered the possession thereof. The contract of sale was in writing and contained the following clause:

"Said Pollard on his part agreeing to finish and wholly complete the contract heretofore entered into between said Johnson, of the one part, and Wood and Foudray, J. W. Browning and Jacob P. Dunn, of the other part, on the 3d day of January, 1865; said Johnson agreeing to pay Pollard for finishing the contract between him and Jacob P. Dunn, in said contract mentioned, and on the same terms and payments therein mentioned; Pollard to look to the remaining parties, Wood, Foudray and Jones, the successor of Dunn and Love, for his payment for finishing and completing said contract."

As the contract to furnish logs was several, we construe this agreement to look to the other parties to refer to the payment for sawing done for them individually under the contract.

This contract was signed on the 6th of February, 1866,

and it provided that Pollard should receive possession of the mill on the following day.

The court instructed the jury, that "the fact that the plaintiff sold his mill after he was notified by the defendants that they would pay for no more sawing and deliver no more logs, or that he made a sub-contract with some other person to saw the logs that might be delivered, cannot affect the right of recovery, or the measure of damages."

It is insisted that this instruction was wrong; that as Johnson was to let Pollard receive the full amount of the contract price for the sawing, no possible profit could have resulted to Johnson, if the contract had been completed and the logs furnished; in other words, that the measure of damages between Johnson and the defendants is to be fixed by the profits he might have realized by a sub-contract with a third party to do the work. But if Pollard had contracted to do the work for half its actual value, it would not seem reasonable to charge the defendants with the consequences of Pollard's folly—to impose upon them a liability for damages which resulted, not from the breach of their contract, but from the shrewdness and skill of the other contracting party in dealing with a third person. Plainly such consequences are not contemplated when parties enter into a contract, which by reason of some misfortune they may be unable to complete; but they consider rather the usual cost of the work for which they contract to pay and regard their liability as limited by the margin between such cost and the contract price. Johnson had no power by any sub-contract he might make with Pollard, either to increase or diminish the damages resulting from a violation by the defendants of their contract. Those damages must be determined alone from, and regulated by, the terms of the contract into which the plaintiff and defendants voluntarily entered.

Independent of authority, it would seem to be a reasonable and just rule, that on the breach of an executory contract like the present, the measure of damages should be

the difference between the contract price of the work to be done and the reasonable cost of the work at the usual and ordinary prices. This rule would be just; for it fixes such damages on the breach of the contract as the parties are presumed to have had in contemplation at the making of it. It would be fixed and certain, and not a sliding scale to be moved at the will of either party; for it is not affected by the subsequent contracts of one party with third persons. It would be equal and uniform, measuring by the same standard the rights of the close and the charitable, the shrewd and the simple.

This rule is approved by reason, and is also established by authority. In the case of *Masterton* v. *The Mayor of Brooklyn*, 7 Hill, 61, decided in the Circuit Court by KENT, and in the Supreme Court by NELSON, C. J., approved in *Story* v. *N. Y. & Harlem, R. R. Co.*, 6 N. Y. 85, and in *Seaton* v. *The Second Municipality*, 3 La. Ann. 44, and quoted with approval by Sedgwick, in his excellent treatise, page 73, the learned Chief Justice says:

"Profits or advantages which are the direct or immediate fruits of the contract between the parties  *  *  *  are part and parcel of the contract itself, entering into and constituting a portion of its very elements, something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfilment of any other stipulation. They are presumed to have been taken into consideration and deliberated upon before the contract was made, and formed, perhaps, the only inducement to the arrangement."

The plaintiffs in that case had a contract with the city authorities of Brooklyn, by which they agreed, for a certain stipulated price, to furnish and deliver marble to build a City Hall in Brooklyn, from Kain & Morgan's quarry in East Chester. They also had made a collateral contract with Kain & Morgan to furnish them the marble at a certain price. It was contended there, as here, that the measure of damages on a breach of the contract by the city authorities, was the difference between the price the plain-

tiffs were to receive from the city of Brooklyn, and the price they were to pay Kain & Morgan. Upon this point the Chief Justice says:

"It will be seen that we have laid altogether out of view the sub-contract of Kain & Morgan, and all others that may have been entered into by the plaintiffs, as preparatory and subsidiary to the fulfilment of the principal one with the defendants. Indeed, I am unable to comprehend how these can be taken into the account, or become the subject matter of consideration at all, in settling the amount of damages to be recovered for a breach of the principal contract. The defendants had no control or participation in the making of the sub-contracts, and are certainly not to be compelled to assume them if improvidently entered into. On the other hand, if they were made so as to secure great advantages to the plaintiffs, surely the defendants are not entitled to the gains which might be realized from them. In any aspect, therefore, these sub-contracts present a most unfit, as well as a most unsatisfactory basis upon which to estimate the real damages and loss occasioned by the default of the defendants."

In the case of *Story* v. *N. Y. & H. R. R. Co.*, 6 N. Y. 85, where the same principle contended for by the appellants in this case had been adopted in ascertaining the damages, the court said:

"This rule of damages was fully considered in the important case of *Masterton* v. *The Mayor, &c., of Brooklyn*, 7 Hill, 61, and held not only to be entirely inadmissible, but that a sub-contract could not be taken into consideration, as an item of evidence in estimating the profits of the principal one. The reasons given by the learned Chief Justice for laying it entirely out of view are full and satisfactory."

Sedgwick, in speaking of the class of contracts to which the one sued on belongs, says:

"It appears to be settled in regard to this class of agree-

ments, that the contractor is entitled to recover the profits he has lost by the default of the other party to the undertaking; that in estimating these profits, his sub-contracts are not to be taken as evidence thereof; but they are to be arrived at by taking the market value at the time of the breach, and if there be no market value, then by a minute inquiry into cost of materials, the expense of transportation, and the amount and value of labor required." Sedgw. Dam. 364.

It seems to us that the instruction given was correct, even if we place out of view the question, whether the notice given by the defendants, that they would pay for no more sawing and furnish no more logs, did not authorize this action by the plaintiff to recover for a violation of the contract, as was ruled in *Morrison* v. *Lovejoy*, 6 Minn. 319.

It is complained that the court below erred in the eighth instruction, which was as follows:

" The rule of damages as to profits, in case you find the defendants committed a breach of the contract without sufficient cause, is, that the plaintiff in such case would be entitled to the reasonable profits he would have made upon the contract if it had been carried out. To ascertain the profits, there should be deducted from the total amount the plaintiff would have received, the cost of doing the work, in labor, in wear and tear of machinery, in time of use of machinery, and value of superintendence, according to the evidence in the case. The balance will be the profits and damages to which the plaintiff would in such case be entitled."

Very closely in point is the case of *Morrison* v. *Lovejoy*, *supra*. Plaintiffs agreed to run and use for manufacturing lumber, exclusively for the defendants, certain mills, situated at Saint Anthony, from the date of the contract till May 15th, 1860, and the defendants agreed to furnish a sufficient quantity of logs to keep said mills in full operation during said period, and to pay plaintiffs at the rate of five dollars per thousand for sawing pine lumber, and seven dollars per

thousand for hard wood. The action was brought to recover an alleged balance, and also damages by reason of defendants refusing to furnish logs to keep said mills in operation.

The case was very fully argued by counsel on both sides, and after a thorough discussion of the authorities the court said:

"When one party to an executory contract like that on which this action is brought refuses further to comply with it on his part, the other party has an immediate cause of action for said breach; and he may sue on it at any time and recover the damages which he may have sustained by being deprived of the benefits accruing to him under it.

"If he treat the contract as ended and sue immediately upon its breach, his damages are to be measured by the value of the contract to him at the time it was broken; and this value is estimated by the profits he would have realized during the continuance of the contract had it been faithfully carried out by the parties. But in estimating the profits which a party under such a contract would realize, allowance must be made for every item of cost and expense necessarily attending a full compliance on his part. If, therefore, the contract is for manufacturing a given article, and mills and machinery are necessarily employed in making it, the reasonable or usual rent, or value of the use of such mills or machinery, enters into the cost of manufacture, and should be taken into consideration in estimating the profits, because the profits are as directly affected by such expenses as by any other."

In the language of *Fox* v. *Harding*, 7 Cush. 516, "if the profits are such as would have accrued and grown out of the contract itself as the direct and immediate fruits of its fulfilment, they form a just and proper item of damages to be recovered against the delinquent party on a breach of the agreement." *Cunningham* v. *Dorsey*, 6 Cal. 19; Mayne on Damages, 16.

But appellants insist that this rule allowing the contractor to recover profits is confined to "parties who undertake

to construct public works on a large scale, such as railroads, canals, or government buildings;" and we are cited to Sedgwick on Damages, 364, as authority for this distinction. But it will be observed that the first illustration of the application of this rule given by the author is a trivial contract between private parties, where a millwright agreed to put machinery into the plaintiff's mill in a good and workmanlike manner, and for his failure he was held liable for such additional sum beyond the cost of repairs as the mill would have been worth to the plaintiff if the defendant had fulfilled his contract, more than it was worth while the machinery was insufficient.

But the law can recognize no distinction between public and private contracts; between the large and the small. To contracts of the same class the same law must be applied.

We are cited to *Jones* v. *Van Patten,* 3 Ind. 107, where it was held, that "the plaintiff should have had such damages as would have placed him in as good a condition at the time the contract was broken as he would have been in had he not made the contract."

In fine, he may be compelled to rescind by the wrongful act of the other party. His contract may have been of great value to him, and yet he is to receive no damages for its violation, no compensation, but simply be placed in the same position as though he had never made the contract, and this for no default on his part. This, in our opinion, never was the law.

But it is urged that the question of damages depends upon the loss of time incurred by the violation of the contract; that if the plaintiff could have procured other work from which profits would have accrued, such profits should have been deducted from his estimated damages.

This is doubtless true, but the matter is with the defendant to prove in reduction of damages. *Costigan* v. *The Mohawk & Hudson R. R. Co.,* 2 Denio, 609. In *Hamilton* v. *McPherson,* 28 N. Y. 72, it is said: "The burden of

proving that the damages which have been sustained in such cases could have been prevented, unquestionably rests upon the party guilty of the breach of contract." The defendants introduced no such proof, but the plaintiff was prepared to perform his contract.

It is objected that the first suit was brought too soon; but the second action, with which it was consolidated, covered the claim included in the first.

It is claimed that the plaintiff violated his contract by a refusal to deliver lumber sawed, on the 18th of January. But the finding of the jury that the sawing of the lumber was not paid for is conclusive on this point.

Judgment affirmed, with one per cent. damages and costs.

*N. B. Taylor, M. M. Ray, J. W. Gordon, W. March,* and *S. Major,* for appellants.

*J. T. Dye* and *A. C. Harris,* for appellee.