McAninch v. Hamilton.

Filed May 16, 1891.

No. 180.

## McAninch v. Hamilton.

APPELLATE COURT.—*Complaint.*—*Sufficiency of.*—A complaint which is first questioned on appeal must, to justify a reversal of the judgment, wholly omit the averment of material and necessary facts, essential to the existence of the cause of action attempted to be stated.

LANDLORD AND TENANT.—*Breach of Parol Agreement to Lease Land.*—*Damages.*—*Insufficiency of Evidence.*—For evidence held insufficient to support

a verdict for the plaintiff in an action to recover damages for the violation of a parol agreement to rent land, see opinion.

From the Clinton Circuit Court.

*J. V. Kent,* for appellant.

*F. Beale,* for appellee.

ROBINSON, J.—This action was commenced by the appellee against the appellant to recover damages for the violation of a parol agreement for the leasing of certain lands by the appellant to appellee. The complaint is in two paragraphs, with substantially the same averments. The appellee alleges that on the — day of February, 1889, he entered into a parol agreement with the appellant by which the appellant agreed to lease and rent to the appellee for a period of one year the real estate described in the complaint at an annual rent of $135; that the appellee should give the appellant his promissory note for said sum, payable to appellant's husband, due January 1st, 1890, with security, and that it was agreed to accept one Harvey Rice as surety thereon; that said lease was to run one year from March 1st, 1889, to March 1st, 1890; that, relying upon the contract and agreement of leasing as aforesaid, appellee began work upon said real estate, and to prepare the same for farming and cultivation for the coming season; that by virtue of said contract, and by order and direction of the appellant, and by and with her knowledge and consent, he hauled a large amount of manure and caused the same to be placed upon said land, and also prepared for planting and gardening a part thereof; that he was engaged in said work for the period of — days, and that his services therefor were reasonably worth the sum of fifty dollars; that, relying upon said contract, appellee made necessary preparations to move upon and farm said land; that in so doing he was put to large expense of time and money, to wit, one hundred dollars; that, on the — day of March, 1889, at the request and direction of the appellant, the appellee tendered

to the appellant his promissory note, payable as directed, to appellant's husband for the said sum of $135, dated March 1st, 1889, due in ten months after date, with said Harvey A. Rice as surety thereon, and demanded possession of said real estate; that appellant refused to accept said note and deliver appellee possession thereof as provided for in said contract, and continuously refused such possession, although frequently requested to deliver the same.

The complaint also alleges, with much certainty and particularity, a compliance by the appellee with the terms of the contract, as well as the nature and character of the damages he sustained in being kept out of the possession of said real estate, and demands judgment, etc.

The appellant answered in two paragraphs:

*First.* General denial.

*Second.* Settlement before the commencement of the suit.

The appellee replied by general denial.

The cause was tried by a jury, resulting in a verdict for the appellee for $60, and judgment was rendered on the verdict over a motion for new trial. The evidence is in the record.

Under the assignment of errors the sufficiency of the complaint is challenged in this court, for the first time, on the ground " that it does not state facts sufficient to constitute a cause of action." An assignment of error of this character questions the sufficiency of the complaint, after verdict and judgment thereon. With the curative effect of such verdict and judgment, under the presumptions indulged in their favor and support, when thus questioned, the complaint, must be radically and fatally defective. It must wholly omit the averment of material and necessary facts, essential to the existence of the cause of action attempted to be stated, to authorize or justify the reversal of the judgment by an appellate court on account of such complaint. *Smith* v. *Smith,* 106 Ind. 43.

But the complaint in this action for the recovery of dam-

ages by reason of the breach of the contract therein alleged, was sufficient on demurrer, and it was certainly sufficient when called in question, after verdict and judgment thereon, for the first time in this court.

Under the alleged error of the circuit court in overruling the motion for a new trial, appellant's counsel insists, with much confidence, that the verdict of the jury was not sustained by sufficient evidence, was contrary to law, was excessive, and, at most, should have been for merely a nominal sum, and that there was no evidence to sustain the verdict for more than a nominal sum.

We have carefully read and examined the evidence, and our conclusion accords with the appellant. We think that there is much merit in this claim.

The evidence shows the following facts: Previous to March 1st, 1889, negotiations were being carried on between the appellee and appellant in relation to leasing the forty-acre tract of land described in the complaint, which negotiations resulted in the consummation of a parol agreement whereby the appellant leased to the appellee the described land for the term of one year from April 1st, 1889, at an annual rental of one hundred and thirty-five dollars, for which the appellee was to execute his note payable in bank, dated March 1st, 1889, due in ten months, with one Harvey Rice as his surety. The appellee did not execute his note on the 1st of March, as agreed upon, after which time appellant demanded the execution of the note. There was still some delay when again, on the 25th of March, appellant, through her husband as her agent, demanded the execution of the note, as he claims, on that day, but appellee claims, in his evidence, that time was waived so it was done that week; that on the 28th of March, appellee, with the surety named, signed the note dated March 1st, 1889, due in ten months, payable in bank to appellant's husband for the amount and in all things in accordance with the agreement, and on that day tendered said note to appellant

and her husband, as her agent, and demanded possession of the real estate under the agreement, which note they refused to accept and refused to give appellee possession under the agreement. The claim is then made by appellant that there was a settlement, but there is a conflict on this claim, appellee claiming it was a settlement of other matters and did not include his claim for damages growing out of the breach of the agreement for the lease of the real estate.

By the appellee's evidence it is shown that before the controversy arose over the execution of the note, and before the term of the lease was to commence to run, under his own proposition he hauled three loads of manure and placed it on the real estate, sowed a bed of lettuce in the garden and spent a quarter of a day in putting out the fire that had caught in some grass. The amount of work done was merely nominal in value.

There were from twenty-five to thirty acres of cleared land, including about two acres occupied by house and stable and used as a garden, the remaining part of the land was not shown to be of any rental value for any purpose. There was a four-room frame house, and a stable built with poles set in the ground and boarded up, on the premises.

Upon the question of the measure of damages the evidence on behalf of the appellee was as follows:

The appellee testified, on direct examination, that there were thirty acres of the land in cultivation, including the barn lot, house and yard.

Appellee was then permitted by the court to answer the following question:

" You may state to the jury what, in your opinion, the use and occupancy of the land for the period of one year, beginning March 1, 1889, and ending March 1, 1890, is worth ? "

Appellee answered: " Three hundred dollars."

On cross-examination the appellee stated that he knew

nothing of the value of rents in that neighborhood, although he lived within forty rods of the premises, but that the house, stable and garden were worth $5 per month; that when the agreement of lease was entered into one hundred and thirty-five dollars was a fair annual rental of the premises.

The question as to the value of the use and occupancy of the land for the period of one year, beginning March 1, 1889, and ending March 1, 1890, was propounded to M. N. Belknap, a witness on behalf of appellee, who answered:

" The rental value would probably be worth one hundred twenty-five or one hundred and thirty dollars."

John Sheets, on behalf of appellant, on direct examination answered the question as to the value of use and occupation of the land for the term of the tenancy, at three hundred dollars. On cross-examination the witness placed the rental value at $4.40 to $4.50 per acre for the thirty acres of cleared land, and estimating the use and occupancy at $300, stated : " The rental value, as I understand it, is about what a man had to pay for the privilege of farming ground, and the difference between that is what he raises outside, counting labor and expenses; he could raise enough stuff to sell $300 worth; sometimes, when a season is like it was last year, people will lose by giving cash rents."

Harvey Rice, a witness on behalf of the appellee, on direct examination, answered the question as to the value of the use and occupancy of the land for the term of the lease at three hundred dollars, but on cross-examination said the fair annual rental value of the land was one hundred and thirty-five dollars; that in his estimate of the value of the use and occupation at three hundred dollars, he meant what would be sold off it in a year, which would include labor, expense, trouble and worry in raising it; that there might be a failure of crops, but there could be three hundred dollars' worth of produce sold off the farm in case it was a

good season and the land well tended. If it was not an average season there would not be that much, and if it was not well farmed there would not be that much.

This was all the evidence in the case that related to the measure of damages. In the determination of this question under the evidence we do not overlook the long and well established rule that if the evidence tends to sustain the verdict we can not reverse the case.

It therefore became an important question, under the contract sued on, being executory, to look to the law as to the measure of damages as applied to the evidence in this case.

In the case of *Cincinnati, etc., R. W. Co.* v. *Lutes*, 112 Ind. 276, it is held, that " The party who has been wrongfully deprived of the gains and profits of an executory contract may recover as an equivalent, and by way of damages, the difference between the contract price—the amount which he would have earned and been entitled to recover on performance—and the amount which it would have cost him to perform the contract. In estimating such cost, allowance must be made for every item of cost and expense necessarily attending a full compliance on his part; and, in estimating his profits, merely speculative and conjectural damages should be excluded." See, also, *Dunn* v. *Johnson*, 33 Ind. 54; *Hadley* v. *Prather*, 64 Ind. 137; *Fairfield* v. *Jeffreys*, 68 Ind. 578; *Cassidy* v. *Le Fevre*, 45 N. Y. 562; *Devlin* v. *Mayor, etc.*, 63 N. Y. 8.

There was no evidence as to the value of the lease after the payment of the rental agreed upon, from which it could be inferred that appellee had sustained anything more than nominal damages, and the statement of the witnesses as to the value of the use and occupation of the land when explained on cross-examination did not amount to anything more than merely speculative and conjectural damages. There was no evidence whatever showing the cost and expenditure necessary to comply with the contract; in fact there was a total failure of proof upon which to predicate a verdict for

more than nominal damages. We must, therefore, conclude that, allowing the benefit of all legal intendments or inferences in favor of the appellee, there was no evidence to sustain the verdict.

Other errors are complained of, but as our conclusion requires a reversal of the cause, it is unnecessary to consider them.

The cause is reversed, with instructions to grant a new trial, at costs of the appellee.

Filed May 15, 1891.