QUAKER METAL COMPANY, a corporation of the State of Delaware, *v.* STANDARD TANK CAR COMPANY, a corporation of the State of Delaware.

1.   PLEADING—WHERE COUNT OF DECLARATION SETS OUT FACTS IN SUPPORT BOTH OF GENERAL AND SPECIAL DAMAGES, SPECIAL DEMURRER MAY BE DIRECTED SOLELY TO SPECIAL DAMAGES.

Statement.

Where plaintiff, in each count of his declaration, pleads a contract with a claim for damages, and, in addition thereto, claims special damages, arising from the breach when taken into consideration with other facts, special demurrers can be directed to those parts of each of the counts which set out facts upon which claims of special damages are based for the purpose of testing the sufficiency of the facts to support such claims.

2.  DAMAGES—SPECIAL DAMAGES TO BE RECOVERED MUST BE SPECIALLY PLEADED.

Special damages to be recovered must always be specially pleaded, and the facts upon which they are predicated must be specifically set out.

3.  PLEADING—GENERAL DEMURRER FAILS IF ANY COUNT OF DECLARATION IS GOOD.

Where a general demurrer is filed to an entire declaration and any count of the declaration is good, the demurrer fails.

4.  SALES—MEASURE OF DAMAGES IN SELLER'S ACTION FOR BREACH OF CONTRACT FOR SALE OF GOODS TO BE MANUFACTURED STATED.

Where the contract is for the sale of goods to be manufactured, the measure of damages, in action by the seller for breach, is the difference between the cost of manufacture and delivery and the contract price, especially where the chattels to be manufactured have no general market value.

5.  SALES—UNLIQUIDATED CLAIM OF SUBCONTRACTOR AGAINST SELLER HELD NOT ELEMENT OF DAMAGE IN SELLER'S ACTION AGAINST BUYER FOR BREACH OF CONTRACT.

In determining damages due to a vendor from a vendee for a breach of an executory contract for the manufacture of goods, the terms of a subcontract between vendor and a third person who was to manufacture the goods to fill the contract of sale, default in carrying out such subcontract by plaintiff being caused by the vendee's breach, cannot be considered, where the claim of the subcontractor against the vendor is unliquidated in amount.

*(November 5, 1923.)*

RICE and RODNEY, J. J., sitting.

*H. H. Ward, Sr.*, (of Ward, Gray and Neary) for plaintiff

*Sylvester D. Townsend, Jr.*, and *Clarence A. Southerland* for defendant.

Superior Court for New Castle County, September Term, 1923.

No. 52, September Term, 1922.

This suit is based upon two contracts between the plaintiff and defendant, both being dated July 8, 1920. The first provided for the delivery to the defendant of 16,000 five by nine inch journal bearings, and the second for the delivery of 30,000 five and one-half by ten inch journal bearings.

The declaration consists of six counts, the first, second and third being devoted to contract number one and the fourth, fifth and sixth to contract number two. The only difference between the first, second and third counts is that a different date of breach is alleged in each, namely, July 1, 1921, in the first; June 1, 1922, in the second and October 31, 1920, in the third. Each of the first three counts allege the making of the contract for the delivery of the 16,000 journal bearings and alleges that 716 journal bearings were manufactured and delivered, and that 5,732 additional journal bearings were manufactured, but not delivered. Each of the first three counts sets out the contract in general terms and each alleges that the Damascus Bronze Company was the sole manufacturer of the specified journal bearings; that shortly after entering into the contract with the defendant, the plaintiff entered into a contract with the Damascus Bronze Company for the manufacture of the bearings of the specifications and quantities contracted for by the defendant and that the defendant had full knowledge of these facts. Each of the first three counts alleges the breach of the contract by the defendant, and as a consequence thereof, that the plaintiff has been obliged to default in its contract with the Damascus Bronze Company, has, therefore, become liable and responsible to the Damascus Bronze Company in the sum of $175,000.00, and this sum the plaintiff claims as special damages. Each of the first three counts alleges that 5732 bearings have been manufactured by the Damascus Bronze Company and tendered to the plaintiff, but that the plaintiff, by reason of the defendant's breach of contract, has defaulted in its contract with the Damascus Bronze Company and has not taken, accepted or paid for these manufactured bearings which the Damascus Company now holds, it being alleged there is not and has not been any general market therefor. It is alleged that as a consequence of the breach of contract by the defendant that the plaintiff has defaulted in its contract with the Damascus Company concerning these 5732 bearings valued at $25,000.00 and that the plaintiff is liable and responsible to the Damascus Company in the sum of $25,000.00, which the plaintiff seeks to recover as special damages.

The plaintiff also seeks to recover general damages in the sum of $25,000.00, as the loss of profits which would have come to the plaintiff upon the performance of the contract by the defendant.

The fourth, fifth and sixth counts, as has been said, are based upon the contract for 30,000 bearings, none of which were manufactured or delivered. Except for the differences in the date of breach alleged, as above set out, they are similar and claim $175,000.00 special damages, being the amount claimed by the Damascus Bronze Company, $25,000.00 loss of profits to the plaintiff and interest on general and special damages.

To the declaration special demurrers have been filed. The special demurrers are specifically directed to the facts sustaining the claim for special damages of $175,000.00, as shown in each of the six counts, to the facts sustaining the claim for special damages of $25,000.00, as shown in each of the first three counts, and eleven causes of special demurrer are set out, as to each of the six counts.

RODNEY, J., delivering the opinion of the Court:

The causes of special demurrer to the declaration in this case may be generally considered under three heads or groups.

The first and second groups relate to the claims of special damage of $175,000.00 and $25,000.00, respectively, alleged by the plaintiff to be claimed by the Damascus Bronze Company; the third group relates to the pleading of the facts constituting the cause of action.

[1] Each count of the declaration in addition to the claim of special damage and in conformity with our practice and with good pleading concludes with a general *ad damnum* clause. It is confidently and, indeed, plausibly argued by the plaintiff that where a count shows a cause of action arising from a contract, a breach of such contract and a sufficient averment of some damage, that a demurrer will not lie to such count; that the general averment of damage is sufficient to bring the case to trial and that questions of general or special damage are questions to be raised at the trial upon the offer of evidence, and many cases and text books are cited as supporting that contention. As we view the matter,

however, none of the cases go to the extent contended for by the plaintiff.

What is the situation here? The plaintiff has pleaded a contract with a set of facts tending to show a breach, together with a claim for damages. In addition to this it claims special damages arising from the breach when taken into consideration with other facts. To this claim for special damages a special demurrer has been filed. Why should it not be sustained?

As Mr. Stephen points out:

"In the course of administering justice there are two successive objects, —to ascertain the subjects for decision and to decide."

Pleading is the recognized system in this State of ascertaining the subjects in controversy, and for decision. One principal object of pleading is to bring out the point in dispute between the parties at as early a stage as possible and to acquaint the parties to a controversy of the nature of the claims of the opposing sides.

As said in 31 *Cyc.* 43:

"Pleadings are statements in logicial and legal form of causes of action and grounds of defense terminating in a single proposition affirmed on one side and denied on the other. They are intended to form the foundation of proof to be submitted on the trial and should advise the parties to an action what the opposite party relies upon, either as a cause of action or defense as the case must be."

"'The rules of pleading have been formed for the furtherance of justice. They are designed to compel the parties to present their claim or defense with logical correctness and precision before the court; to ascertain the real points in controversy, and to prevent the minds of the court and jury from being drawn off upon matters immaterial, irrelevant or unimportant to the true issue." *Easton v. Jones*, 1 *Harr.* 433, note (436); *State v. Short*, 2 *Harr.* 156; *Reading's Heirs v. State*, 1 *Harr.* 190; *State use Godwin v. Collins*, 1 *Harr.* 216.

[2]   With the science of pleading there was developed the law of evidence, but at all times the evidence to be admitted must follow and be consistent with the pleadings. Upon these general principles has the law of special damages been founded. Special damages to be recovered must always be specially pleaded. This is because the nature of special damages is such that they are not the logical and necessary result of the breach, so that in order to recover them they must not only be specially claimed, but the

facts upon which special damages are to be predicated must be specifically set out. The object of pleading special damages, therefore, is to acquaint the opposing side of the claim of the pleader. If the facts supporting a claim of special damages must be specially pleaded, it must follow that they be well pleaded, or the whole object of pleading that the opposing side shall know in advance what he may expect to meet at the trial shall have been in vain. The special demurrer is not directed to the question of special damages as such, but to the inadequacy of the facts supporting such claim.

[3] We find no fault with most of the cases cited by the plaintiff in this case. In these cases it has been held generally that a demurrer is not an available means of law to determine the question of damages. With this we agree. The cases cited by the plaintiff, however, can broadly be divided into four classes: (1) where an erroneous claim for damages is sought to be tested by a demurrer; (2) where a demurrer is entered to a declaration containing a claim for only one kind of damages; (3) where it is sought by a demurrer to measure damages; (4) where objection is interposed by a general demurrer. In none of these cases has the question arisen where the claim is for both general and special damages, and a special demurrer directed alone to the facts tending to sustain the claim for special damages. There can be no doubt that if a general demurrer is filed to an entire declaration and any count of the declaration is good, the demurrer falls. The same is true of two divisible parts of a single count, and yet the law is uniform that a demurrer can be filed to one count alone of a declaration or to a divisible part of a single count. Instances of this are when several breaches are assigned to a single covenant, some of which are sufficient and others not.

In our opinion claims of general and special damages growing out of a breach of contract are so divisible that they may be separately treated. While it is true that they grow out of the same breach, yet they are in themselves dissimilar and require entirely different facts to sustain them. The facts sustaining a claim for

general damages will not be sufficient to warrant a recovery of special damages.· This conclusion is supported by authority.

In *Condit v. Neighbor*, 13 *N. J. Law* 83, at *page* 97, it is said:

"But the plaintiffs' counsel contend, that if they have claimed in the declaration, more than they are entitled to recover, the proper bounds to the recovery will be set on the trial, by the evidence, and that as they have a right to some portion of the rents, the demurrer cannot be sustained. Where the demand exceeds the right, but the fact of excess does not appear by the declaration, there can be no demurrer on this account. But where it is apparent that the plaintiff claims or demands more than his right, there may be a demurrer although some portion of the claim as made, is rightful; for in such case, the rule of good sense as well as of good pleading, is brought into action, that the defendant shall not be compelled to answer or defend for that to which the plaintiff has no lawful right."

In *Hendrickson & Wife v. Pennsylvania R. Co.*, 43 *N. J. Law* 464, it is held that—.

"When, in a count in a declaration, special damages are laid, some grounds of which are good and some bad, a general demurrer to the entire count will not be sustained."

In this case the case of *Condit v. Neighbor* was distinguished because there a special demurrer was entered to the part objected to.

The case of *Kenny v. Collier*, 79 *Ga.* 743, 8 *S. E.* 58, has been cited by the plaintiff. It is in fact, an authority sustaining the view adopted by this Court. In that case there was a claim for general damages and a claim for special damages being loss of anticipated profits. The Court below sustained the demurrer as to the special damage and also dismissed the action. The appellate Court (*citation supra*) reversed the dismissal of the action, but affirmed the action of the court below in sustaining the demurrer to the special damage claim.

In *Gould v. Atlanta*, 60 *Ga.* 164, it is said:

"It may be that some of the special damages alleged are speculative, too remote, or otherwise beyond legal remedy but a sufficient cause of action is set forth, and that being so, the declaration should not have been dismissed on general demurrer. Any mere overreaching as to the specification of damages, was matter for special demurrer."

As said by Holroyd, J., in *Amory v. Brodrick*, 5 *B. & Ald.* 712, 106 *Eng. Reprint*, 1351:

Opinion

"Now the objection is, not that the whole breach is insufficient, but that a part of it is bad. If, however, there be any breach of covenant assigned, in respect of which the plaintiff is entitled to recover, a further allegation, that he has thereby sustained special damage, which by law he is not entitled to recover, will not prevent him from maintaining his action. If this objection be a ground of demurrer in itself, it should, at all events, have been confined to that part of the breach only."

It must be borne in mind that we are not determining that a demurrer lies to a matter of damages, but that a special demurrer does lie to test the insufficiency of facts alleged as constituting a ground for special damages. As said in *Missouri Valley Land Co. v. Bushnell*, 11 *Neb.* 192, 8 *N. W.* 389:

"A demurrer   *   *   *   only lies to the statement of facts constituting the supposed cause of action, not to the prayer for relief, which may be much in excess of what those facts warrant the court to grant."

It is possible that the correct solution of the question may be found in the following suggestion. A declaration sets out a contract between the parties and avers a breach thereof by the defendant. If a general demurrer is interposed by the defendant, it admits the well pleaded contract and breach, and the plaintiff is entitled to at least nominal damages, and this damage is sufficient on demurrer. But where in addition to the general damages there are certain additional facts alleged, not needful in relation to general damages but as a basis for a claim for special damages, a special demurrer directed solely to these additional facts will test their sufficiency, and upon the truth of the additional facts being admitted, if they are insufficient to warrant special damages, the special demurrer will be sustained.

We, therefore, hold that a special demurrer may be directed solely to the facts tending to support a claim for special damages.

An inspection of the claim for special damages in this case reveals the fact that it is based upon an unliquidated claim of a subcontractor. Immediately after the plaintiff entered into a contract with the defendant for the articles mentioned in the declaration the plaintiff also entered into a contract with the Damascus Bronze Company, whereby the Bronze Company would manufacture the articles in question for the plaintiff which would in turn, supply them to the defendant. The claim of the plaintiff

as to the special damages is for the unliquidated amount claimed to be due to the Bronze Company. In considering this matter two further questions arise.

(1) In determining the damages due to a vendor from a vendee for a breach of an executory contract for the manufacture of goods, can the terms of sub-contract between the vendor and a subcontractor be considered?

[4,5] (2) Can these terms be considered where only a claim of the sub-contractor is alleged, unliquidated in amount? The general rule is well settled that upon the breach of an executory contract for the sale of a chattel, the vendor has three remedies, viz.: to store the property for the vendee and sue for the purchase price, to sell it as agent for the vendee and recover any deficiency[2] or to keep the property and recover the difference between the contract price and the market value.

Where, however, the contract is for the sale of goods to be manufactured, this rule does not apply. Then the measure of damages is the difference between the cost of manufacture and delivery and the contract price. This is especially true where the chattels to be manufactured have no general market value as is alleged in this case. *Todd v. Gamble*, 148 *N. Y.* 382, 42 *N. E.* 982, 52 *L. R. A.* 225; *Hinckley v. Pittsburgh Steel Co.*, 121 *U. S.* 264, 7 *Sup. Ct.* 875, 30 *L. Ed.* 967; *Taylor v. Trustees of Poor*, 1 *Penn.* 555, 43 *Atl.* 613, and see cases cited in 7 *Ann. Cas.* 1176.

While, therefore, the damages of the vendor are to be based upon the difference between the contract price and the cost of performance on the part of the vendor, there is some contrariety of opinion as to whether the amount shown by a sub-contract is to be considered in this cost of performance. In *Roehm v. Horst*,178 *U. S.* 1, 20 *Sup. Ct.* 780, 44 *L. Ed.* 953, it is said:

"If the vendor has to buy instead of to manufacture, the same principle prevails, and he may show what was the value of the contract by showing for what price he could have made sub-contracts, just as the cost of manufacture in the case of a manufacturer may be shown."

1.  *Bailey v. S. & H. Infant Wear Co.*, 3 *W. W. Harr.* (*33 Del.*) —,*129 atl. 863*

2.  *Terry v. Amer. Fruit Growers Co.*, 3 *W. W. Harr.* (*33 Del.*)—.

It is possible that this is a mere *dictum* in that case. It seems certain that this principle is opposed to that laid down in Masterton v. Mayor of Brooklyn, 7 Hill (N. Y.) 61, 42 Am. Dec. 38. This case has frequently been cited with approval by the Federal Supreme Court, and by Courts of various States.

In that case the plaintiff entered into a contract with the City of Brooklyn to cut and furnish all the marble required to build the City Hall. The marble was by the contract to come from Kain & Morgans Quarry. After the contract was made the vendor entered into a sub-contract with Kain and Morgan for the furnishing of the marble. Upon default by the City the vendor, Masterton, brought suit and in addition to his general damages claimed the damages that he would be liable for to Kain and Morgan for the breach of the sub-contract. The Court by Nelson, C. J., held that since the defendant had no control over the sub-contracts that it should not be compelled to assume them if improvidently entered into, nor were the defendants entitled to any gains realized from them; that the idea of assuming that the plaintiffs would be compelled to break all their subcontracts as a consequence of the breach of the principal one is too hypothetical and remote to lead to any safe or equitable result. See also *Dunn v. Johnson*, 33 *Ind.* 54, 5 *Am. Rep.* 177; *Story v. N. Y. & Harlem Ry. Co.*, 6 *N. Y.* 85; *Devlin v. Mayor*, 63 *N. Y.* 8; *Lovejoy v. Morrison*, 10 *Minn.* 136; *Fox v. Harding*, 7 *Cush.* (*Mass.*) 516.

However this may be, we are unaware of any case similar to the one at bar where unliquidated claims of the sub-contractor have been recovered as an element of damages to a vendor.

The case of *Quemahoning Coal Co. v. Maryland Coal & Coke Co.*, 176 *Fed.* 309, 99 *C. C. A.* 647, is much in point. There the defendant contracted to sell and deliver to plaintiff three hundred tons of coal per day for a year and at the same time, with the defendant's consent, plaintiff contracted to deliver the same coal to a steel Company at an advance of two cents per ton. The defendant having defaulted in delivery, plaintiff sued to recover as its direct damages two cents per ton on the shortage and also as special damages the amount of a claim made against it by the steel

company for breach of its contract, but which had not been adjudicated. It was there held that the plaintiff's claim for special damages was premature until its liability to the Steel company had been adjudicated.

In *Curran v. Smith*, 149 *Fed.* 945, 81 *C. C. A.* 537, where damages, among others, were claimed because of a possible liability on an outstanding indemnifying bond, the Court said: "It will be sufficient to discuss the question of liability when the plaintiffs are shown to have suffered by reason of it. While suit has been threatened it has gone no further, and, the obligation not being absolute, the mere fact that it is outstanding amounts to nothing until they have been compelled to pay something on account of it."

The measure of damages in the present case is probably to be determined by the application of several different rules. Here a part of the goods were manufactured and delivered, a part were manufactured by the sub-contractor, but not delivered, and a part not manufactured. While these rules may be applied in the suit of a vendor against a vendee for the damages due to the vendor, yet we are of the opinion that these differences in the measure of damages make no distinction in our present holding. We, therefore, for the reasons stated, sustain the special demurrers to those parts of each of the six counts which set out facts upon which claims of special damages are based.

The special demurrers entered to each of the six counts generally as distinguished from the special damage clauses of said counts are each and all hereby overruled.